Macomber, J.
There seems to be no irreconcilable repugnancy in the several provisions of this will, though the language used in section first, unexplained and unqualified, would appear to vest the title of the real estate on West Thirty-fifth street in the executors, subject to the execution of some legal trust. It will be seen, however, that the subsequent provisions of the will make an absolute and unconditional devise of the property and of the rents, issues and profits thereof, to sundry beneficiaries. The seventh section of the will, read in connection with the first, gives to the executors only the power under certain circumstances to. sell the real estate, and invest the proceeds thereof for the purposes named: This is a simple power in trust. The terms of the Revised Statutes (2 R. S. 729, § 56 ; 3 R. S. [7 ed.] p. 2181, § 56), arc explicit. “A devise of lands to executors or other trustees, to be sold or mortgaged, where the trustees are not also empowered to *109 receive the rents and profits, shall vest no estate in the trustees; but the trust shall be valid as a power and the land shall descend to the heirs, or pass to the devisees of the testator, subject to-the execution of the power.” See, also, Van Horne v. Campbell (100 N. Y. 287, 317), and the authorities there collated by Chief Judge Rugeb.
If this is the correct construction of the will, it would seem, as a matter of course, that the rights of the infants would follow the surplus arising from the sale of the real estate. Surplus-moneys, arising from judicial sales of real estate, stand in the place of the land for all purposes of distribution among persons having vested interests or liens on the land; and for the actual purposes of this appeal, these moneys must be treated as real estate (Dunning v. Ocean Nat’l Bank, 61 N. Y. 497).
The specified devisees are consequently entitled to the whole of the surplus-moneys according to their respective interests therein under the will, in connection, however, with the assertion of other legal claims which were liens upon the real estate before its sale, or have become liens upon the fund since that time. It is only in case of a lien upon the property or the fund, that presents a proper case for a distribution of the moneys. This has been universally assumed by the courts to be the established rule, and I know of no departure therefrom, save in this instance where the learned referee has awarded certain portions of the fund to simple-contract creditors.
The remedy of parties having a lien is to apportion the fund by motion and not by action, as was held in the case Fliess v. Buckley (90 N. Y. 286). But a legal lien is the very foundation of the claim. Judge Danfobth there says: “The learned counsel for the appellants disclaims any intention to charge the devisees.....personally, but declares the action is in rem to apply the fund to the parties whose superior equity entitles them to it. It is precisely this object which the proceedings already pending in court will attain, if it is limited to those claimants who *110 have, in any form, a lien upon the fund, or who, by virtue of any lien upon the land, are entitled to follow its proceeds.” The court, in that case, further held that a judgment alone'against a decedent’s estate, where no execution had been issued, would not entitle the judgment creditors to share in the distribution of surplus-moneys, but the judgment must be paid only in due .course of administration. See also People ex rel. Short v. Bacon (99 N. Y. 275). Judge Dahfobth again there asserts : “ If the sale had produced a surplus, a different question would have been presented, and the case cited by the learned counsel for the appellants (Fliess v. Buckley, 90 N. Y. 286), would be authority for holding a lien upon it, provided one had previously existed upon the land.”
Thus much, relating generally to the claims allowed by the referee to Charles H. Howard, Mr. Arnold and Mr. Myérs. These gentlemen are, each of them, simple-con-” tract creditors, and appear to have no legal lien either upon the land or upon the fund. There is no equitable principle which the learned referee has sought to invoke in this instance, by which a claim can be thus allowed and asserted against a fund in court. Claimants of that description, however just the debt, are not in a position to assert any further equitable rights against the estate of deceased persons than they would have against any individual who should owe them for an indebtedness resting solely upon a simple contract, except that in a proper case, as the statute now is, the moneys will be ordered into the surrogate’s court to be administered upon.
But it is claimed that the decree of the surrogate of Hew York established Mr. Howard’s demand. That portion of the decree relating to this subject is as follows : “ It is ordered, adjudged and decreed that from the proceeds of the sale of the real estate, whenever the executors shall sell the same, they shall be at liberty and are hereby authorized to reimburse themselves for the said sums of money so advanced, paid, paid out and expended by them, together *111 with interest thereon to the date of such reimbursement, amounting in the aggregate to the sum of $2,300.35.”
In the first place, the executors have not sold the property, either actually or theoretically. In the next place, the surrogate’s decree was not an adjudication that they be paid these moneys, but a permission only, given them .to repay themselves for this claim which is now held by Mr. Howard. I am not disposed to extend the influence of that decree beyond what the strict language used therein would warrant, because it was entered by consent, and apparently under an arrangement by which many persons were to receive allowances of money, and not altogether with that careful guarding of the infants’ interests which has been displayed by the guardian acl Utem.on this appeal.
The order of the special term, confirming the referee’s report, should be reversed, with $10 costs and disbursements, payable to the guardian ad litem by the respondents personally, and the case remitted to the special term, with directions to proceed and distribute the surplus-moneys in accordance with articles four, five and six of Mrs. Morrison’s will, as hereby construed. In the event of the life tenants consenting to take a gross sum, the said fund now in court, after deducting the amount and the necessary costs and expenses of these proceedings, should be paid to the said infants or their guardian, according to their respective interests therein.
II. Special Term ; June, 1887.
An order was duly made in accordance with this decision, and proceedings were subsequently had at special term before Patterson, J., for the distribution of the fund in accordance with the opinion and order ef the general term.
Both life-tenants having filed consents to take gross sums in lieu of their life-interests, each in one-half of the fund, the amounts of these gross sums were ascertained *112 under Rule 71, but several questions then arose as to the proper distribution of the balance of the fund.
First. It was claimed by the guardian ad litem., on behalf of the children of Mrs. Howard, that under the fifth and sixth articles of the will she had only a life estate after the death of Mrs. White, in the one-fourth of Mrs. White’s share devised to Mrs. Howard at Mrs. White’s death. Mrs. Howard, on the other hand, claimed that she "was entitled absolutely to one-fourth of the balance remaining after deducting from one-half of the fund the gross sum representing Mrs. White’s life-interest,—the same as the three other nieces.
Held, that Mrs. Howard had only a life interest after the death of Mrs. White in this one-eighth of the fund, and that Mrs. Howard’s children were entitled thereto in remainder,—the devise over to them : “ Upon the death of the said J. [Mrs. Howard] . . I give, etc., her share in said property to her children,” giving them a remainder in all interests that Mrs.. Howard had in the property under the. previous fourth and fifth articles of the will.
Second. The devise over being to “ her children, share and share alike,” and Mrs. Howard being a widow, and she and her two children being non-residents, a question arose as to whether the amounts representing the remainder-interests of these children could properly be paid to a general guardian of the two present children of Mrs. Howard ; or whether this money should be retained in court during her life-time, in view of her possible re-marriage and the birth of other children.
Held, that by virtue of its chancery powers, the court might properly order this money to be paid to a non-resident general guardian of the existing children of Mrs. Howard, upon his qualifying in this court as their general guardian, .and filing a bond in double the amount of the sum representing the children’s interest, conditioned for the faithful discharge of said trust, and the due accounting by him in this court for the said moneys and all interest *113 accruing thereon,—the said general guardian to invest, and hold the said moneys for the benefit of Mrs. Howard’s two children, and of any other children that may be born to her hereafter; it being further provided that in case the said general guardian should not so qualify within sixty days, the chamberlain of the city of New York should retain the said fund for the benefit of Mrs. Howard’s children, subject to the further order of the court in this action.
Order of distribution entered and filed May 6, 1887.