(88 App. Div. 228.)

POWELL v. HARRISON et al.

(Supreme Court, Appellate Division, Third Department. November 20, 1903.)

1. DECEDENTS' ESTATES—SALE OF REAL PROPERTY—FORECLOSURE—SURPLUS—DISPOSITION—STATUTE.

Under Code Civ. Proc. §§ 2798, 2799, relating to decedents' estates, and providing for the distribution of surplus funds on foreclosure, a judgment on foreclosure of mortgage of a decedent's real estate—letters testamentary having been issued within four years before the sale—should provide that the surplus moneys be paid into the Surrogate's Court from which the letters issued, and not into the Supreme Court.

2. SAME—MORTGAGE—JUDGMENT ON FORECLOSURE.

Decedent, in her lifetime, executed to plaintiff a mortgage as security for the payment of any and "all money which is now due or may hereafter become due and owing to him from" her son G. Plaintiff foreclosed the mortgage, and, after payment of the accrued debts of G., a surplus was left, which was paid to the county treasurer, subject to the order of the court, pursuant to a direction in the judgment. Held, that such surplus was not chargeable with a lien in favor of plaintiff on a judgment thereafter rendered in its favor against G. for breach of contract; the whole amount found due in the foreclosure proceedings having been so paid, and there being no sufficient allegation and no proof that there was any amount whatever thereafter to become due to plaintiff on the mortgage.

3. SAME—COMPLAINT—UNCERTAINTY.

A mortgage provided that it was to secure payment of all moneys due at the date thereof, or which might thereafter become due, to the mortgagee from the mortgagor's son G. The mortgagee foreclosed after the mortgagor's death, and received payment of the full sum claimed. G. was executor of decedent's will. The mortgagee thereafter filed a complaint to have the mortgage continued, alleging "that there are matters pending between plaintiff and the said defendant G., for the security of which said agreement was also given, which are not now determined and are not now due, but which will hereafter become due and owing from the said defendant G. to the plaintiff herein." Held, that the allegations were too general and indefinite to predicate an adjudication on, that the lien of the mortgage was continued as security for any other indebtedness.

4. SAME—JUDGMENT ON FORECLOSURE—TERMINATION OF LIEN.

Where a mortgage is foreclosed, and the property covered thereby is sold pursuant to the judgment, which contains no provisions appropriate to a case where part only of the mortgage debt was due, or authorizing the application of the proceeds of sale first to the payment of the sum

---

¶ 1. See Executors and Administrators, vol. 22, Cent. Dig. § 1612.

due under the mortgage, and directing that the balance, or so much thereof as might be necessary, be invested for the benefit of the mortgagee, to be paid to him from time to time when any further amounts become due, the mortgagee has no lien, by virtue of his judgment of foreclosure, for the payment of any amounts that might, after such judgment, become due under the terms of the mortgage.

5. SAME—SURPLUS—DISTRIBUTION—CONTRACT CREDITORS.
   Where the real estate of a decedent is sold in foreclosure proceedings, though contract creditors have no lien on the surplus moneys at the time of the sale, yet, when their claims as creditors are established by law, they are entitled to share in the distribution of the surplus proceeds.

6. SAME—ORDER OF COURT—MODIFICATION.
   Where a deceased mortgagor's real estate has been sold on foreclosure, producing a surplus, distributable under Code Civ. Proc. §§ 2798, 2799, relating to sales on foreclosure and distribution of surplus of decedents' estates, an order of the court, made without notice to all creditors, under which payment of such surplus is procured to be made to particular creditors, is properly modified by requiring repayment of the fund into court, subject to further orders.

7. SAME—CONTRACT CREDITORS—DISTRIBUTION—STATUTE.
   A contract creditor of a decedent, under Code Civ. Proc. § 2750, relating to sales of decedents' real estate, is entitled to petition for a decree directing the disposition of a decedent's real property for payment of the amount due it, and hence has an interest in having surplus moneys, representing a portion of the proceeds of decedent's property, resulting from sale on foreclosure, lawfully applied to the payment of decedent's debt to it.

8. SAME—MOTION TO AMEND ORDER—CONTRACT CREDITOR AS MOVER.
   The interest which a contract creditor has in the surplus moneys representing a portion of the proceeds of a decedent's real estate, resulting from sale on foreclosure, entitled it, though not a party to the action, to make a motion to amend the judgment on foreclosure and sale, and to have such surplus moneys held subject to the order of the Surrogate's Court, instead of the Supreme Court, as had theretofore been erroneously ordered.

9. ORDER OF COURT—PRESUMPTION.
   Where an order of court does not show that the relief prayed for was granted, though not in express terms denying the relief, the presumption is that it was denied.

10. SAME—FAILURE TO APPEAL—PRESUMPTION.
    Where certain relief is prayed for, but is denied in the order of the court, and there is no appeal from the order by the party to whom the relief was denied, the presumption is that such party is content with the order as made.

Appeal from Special Term, Chemung County.

Action by Martin Powell against Everett Harrison and others. From an order sustaining in part a motion of the Chemung Canal Bank, plaintiff and another appeal. Affirmed.

Emma Halsey Sayles on the 26th day of August, 1899, executed and delivered to Martin Powell, the plaintiff, her mortgage upon two pieces of land, which contained the following provisions:

"This grant is intended as security for the payment to the said party of the second part any and all money which is now due or may hereafter become due and owing to him from Guy Sayles, of Elmira, N. Y., not to exceed, however, the sum of Fifteen thousand dollars, and to protect him from any and all losses on account of his dealings with said Guy Sayles, either on account of services rendered, money advanced, endorsements, contracts or any liability on account of an agreement by which the party of the second part has agreed to protect the firm of Powell Brothers harmless from any loss on account of money due or to become due to said firm from the said Guy Sayles, in other words, to save the party of the second part harmless from any loss

on account of his dealings with said Sayles, not to exceed, however, the sum of Fifteen Thousand Dollars, as above stated.

"And the party of the first part covenants and agrees with the said party of the second part as follows: That the said Guy Sayles will pay said indebtedness and each and every part thereof, at the times when the same or any part thereof becomes due and payable, and if default shall be made in the payment of any part thereof, when the same, or any part thereof, shall become due and payable, then the said party of the second part is hereby authorized and empowered to sell the premises herein described according to law."

Guy Sayles, mentioned in the mortgage, was a son of the mortgagor. The latter died December 24, 1899, leaving a last will and testament, which was admitted to probate by the Surrogate's Court of Chemung county October 18, 1900, and letters testamentary thereon were on that day issued to said Guy Sayles. The decedent at the time of her death was indebted to the Chemung Canal Bank of Elmira, the respondent, in the sum of at least $20,000, which was unsecured; and she did not leave sufficient personal property to pay her debts and funeral expenses. The mortgage was foreclosed by Martin Powell, and the premises therein described were sold pursuant to the judgment of foreclosure. After applying the proceeds of sale to the payment of the amount adjudged to be due, and to the costs and expenses of sale, there remained a surplus of $2,043.62, which was paid to the treasurer of the county of Chemung, "subject to the order of this court," pursuant to a direction to that effect contained in the judgment. Thereafter, and on January 5, 1901, the plaintiff recovered a judgment against said Guy Sayles for $2,516.43. Upon the report of a referee afterwards appointed on the application of the plaintiff in surplus money proceedings, that said mortgage, which had been foreclosed, was security for the payment of said judgment, the plaintiff procured an order of this court directing the county treasurer, after deducting his fees, to pay out of said moneys the referee's fees and an allowance of costs to a guardian ad litem, besides $50 allowance of costs to J. John Hassett, attorney for the plaintiff, and to pay the balance of said sum of $2,043.62 to the plaintiff, to be applied by him in part payment of said judgment against Guy Sayles. Pursuant to that order, the county treasurer paid said $50 to the appellant Hassett, and $1,938.18 to the appellant Powell. Upon the application of the Chemung Canal Bank, the court made an order vacating the order of reference and the order of distribution in such surplus money proceedings, and directed the plaintiff and said J. John Hassett to pay to the county treasurer, with interest, the moneys paid to them, respectively, by such treasurer under the order of distribution so vacated. From such order vacating the prior orders, and directing the repayment of the funds to the treasurer, the plaintiff and said J. John Hassett appeal.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

J. John Hassett, for appellants.
Frederick Collin, for respondent Chemung Canal Bank.

CHESTER, J.   The real property sold to satisfy the mortgage in question being liable to be disposed of to pay the debts of Mrs. Sayles, the decedent mortgagor, upon whose estate letters testamentary had been issued within four years before the sale, the judgment of foreclosure should have provided that the surplus moneys be paid into the Surrogate's Court of Chemung county, from which the letters issued, subject to the direction of that court, and not, as was done, into the Supreme Court.   Code Civ. Proc. §§ 2798, 2799.

Under the judgment of foreclosure, there was no lien upon the property, or chargeable upon the proceeds of sale, which has not been paid, for the whole amount found due, and directed by the judgment

to be paid out of the proceeds of sale, has been so paid. The balance has been paid into court as surplus moneys, and, so far as the judgment of foreclosure goes, they are not chargeable with a lien in favor of the plaintiff. It is true that the mortgage which was foreclosed was given by Mrs. Sayles to secure payment to the plaintiff of all moneys due at the date of the mortgage, or which might thereafter become due to him, from Guy Sayles, not exceeding $15,000; but there were no sufficient allegations in the complaint and no proof before the referee appointed to take proof of the amount due upon the mortgage, and of the facts and circumstances stated in the complaint, that there was any amount whatever thereafter to become due to the plaintiff on the mortgage. The allegations in the complaint "that there are matters pending between the plaintiff and the said defendant Guy Sayles, for the security of the performance of which said agreement was also given, which are not now determined, and are not now due, but which will hereafter become due and owing from the said defendant Guy Sayles to the plaintiff herein," are altogether too general and indefinite, even if there was any proof before the referee in support thereof, which there was not, upon which a judgment continuing the security could be based, or upon which the clause in the referee's report, "that the mortgage should be continued as security for indebtedness not mentioned in the complaint herein," could properly be predicated. While there is an inaccurate recital in the judgment as to the referee's report in this respect, and the judgment contains the usual order confirming such report, there is no adjudication, nor could there properly have been, upon this complaint, and the proof thereunder, that the lien of the mortgage was continued as security for any other indebtedness than that adjudicated upon and paid by the proceeds of sale. The mortgage covered two pieces of property, both of which were sold pursuant to the judgment, which contained no provisions appropriate to a case where a part only of the mortgage debt was due, or authorizing the application of the proceeds of sale first to the payment of the sum due under the mortgage, and directing that the balance, or so much thereof as might be necessary, be invested for the benefit of the plaintiff, to be paid to him from time to time when any further amounts became due. It is clear, therefore, that the plaintiff had no lien by virtue of his judgment of foreclosure for the payment of any amounts that might, after such judgment, become due under the terms of the mortgage. It is true, also, that the Chemung Canal Bank, being only a contract creditor of Mrs. Sayles, had no lien upon the surplus moneys at the time of the sale; but both the plaintiff and the bank, upon their claims as creditors of decedent being established as required by law, would be entitled to share in the distribution of the proceeds of a sale of her real property for the payment of her debts.

If these surplus moneys had been directed by the judgment to be paid into the Surrogate's Court, as the law requires, to be there distributed, they could not have been paid out, except upon a citation to each person who would be entitled to share in such distribution (Code Civ. Proc. § 2799), and the respondent would have been entitled to notice; but they have in fact been paid out under an order made upon

notice only to a guardian ad litem for an infant defendant, being the only party who appeared in the action.

The claim under which the plaintiff secured payment to him of a portion of these surplus moneys, and which he insists is secured by the mortgage which he foreclosed, was one upon which he recovered judgment against Guy Sayles subsequent to the judgment of foreclosure in an action for damages for an alleged breach of contract on the latter's offer of judgment. The respondent questions the validity of this judgment, and insists that the amount thereof is not a lien upon such surplus, either under the judgment of foreclosure or under the mortgage. As the case stands, the plaintiff and his attorney, to the extent of the allowance of costs paid to him out of the fund, have procured payment to themselves of portions of these moneys under an order of the court made without notice to the respondent, and without its having had an opportunity to be heard upon the alleged invalidity of plaintiff's claim.

The president of the respondent bank, in the moving affidavits, swears to facts showing that the mortgagor, Emma H. Sayles, at the time of her death, was indebted to the respondent in a large amount upon her indorsements of promissory notes made by Guy Sayles to the bank, and duly protested for nonpayment. Although the respondent is simply a contract creditor of the decedent, it is entitled, under section 2750 of the Code of Civil Procedure, to petition for a decree directing the disposition of the decedent's real property for the payment of her debts. It therefore has an interest in having these surplus moneys, which represent a portion of the decedent's real property, lawfully applied to the payment of her debts, including that owed to it. That interest, too, is one which I think entitles it to make the motion which it did in this case, although it is not a party to the action. Dwight's Case, 15 Abb. Prac. 259.

The appellants controvert the claim of the respondent that it is a creditor of the decedent, but that question, as well as the question as to the alleged invalidity of the claim of the plaintiff to the surplus moneys, can be litigated and determined in the proceedings which will necessarily follow compliance by the appellants with the order appealed from.

In the notice of motion for the order appealed from, the Chemung Canal Bank asked for an order, among other things, amending the judgment of foreclosure and sale herein, if to the court such amendment may seem required by law, and striking therefrom the words "subject to the order of this court," and also that such surplus moneys, when repaid to the treasurer of the county of Chemung, be held subject to the further order of the Surrogate's Court of Chemung county. The order, as made, while not in express terms denying this relief, does not show that it was granted; and, because of its not having been granted, the implication is that it was denied. The bank not having appealed from the order, it must be assumed to be content with it as it is in that respect. This situation has somewhat embarrassed us in affirming this order, and thus enforcing compliance with the law requiring these moneys to be paid into the Surrogate's Court, for, when the moneys are returned to the county treasurer,

under the order appealed from, they will be there subject to the order of the Supreme Court, the same as they were before they were first taken out.   But notwithstanding this, we see no reason why an order could not be made by the Special Term, without any modification of the judgment, as soon as the order appealed from is complied with, upon the application of the bank or of any creditor of the decedent, directing that the moneys be paid out of the Supreme Court, and into the Surrogate's Court, to be held subject to the order of the latter court.

The order should be affirmed, with $10 costs and disbursements, and with leave to the respondent or to any creditor of the decedent to apply to the Special Term for the order last above mentioned. All concur.