Caroline A. C. Nichols, Plaintiff, *v.* Ira A. Howell et al., Defendants.

(Supreme Court, Steuben Special Term, August, 1921.)

Foreclosure — surplus money proceedings — judgments — service by publication — judgment docketed before delivery of referee's deed preferred over judgment docketed thereafter.

> The day before the execution, delivery and recording of a referee's deed in foreclosure, a money judgment was recovered and docketed against the mortgagor, who had disappeared from his home in this state. Thereafter two other separate money judgments were recovered against the mortgagor, who, in each of said actions, including the one in foreclosure, was served with process by publication. The sheriff assumed to levy upon the surplus moneys by virtue of a warrant of attachment issued in each of the last two actions. *Held,* that upon a motion to confirm the report of the referee in a proceeding to distribute the surplus, the defendant mortgagor must be deemed to be a resident of the state but absent therefrom, as claimed by the judgment creditors on their applications for their warrants of attachment.

> The first money judgment was valid and became a lien upon the surplus when it was deposited with the county treasurer, and the order confirming the report, except as to a dower claim disallowed, will provide that after the payment of the referee's fees and motion costs to the attorneys for the first judgment creditor and the amount due upon his judgment, the residue, if any, be paid *pro rata* upon the other two judgments.

Motion to confirm the report of a referee in a proceeding to distribute the surplus arising from a sale in a mortgage foreclosure in the action above entitled.

Cole & Knapp (Wilbur F. Knapp, of counsel), for Alvah Armstrong.

Fred W. Hastings, for Standard Oil Company of New York.

Thomas Shannon, for Bath National Bank.

James O. Sebring (Wilbur F. Knapp, of counsel), for Birddina Howell.

STEPHENS, J. The fund in controversy arose upon the sale of property that was owned by the defendant Ira A. Howell.

The referee, appointed to determine the liens of the several above named claimants to the fund, has reported that Birddina Howell is first entitled to be paid therefrom the value of her inchoate right of dower in the mortgaged premises; that the claimant Alvah Armstrong is next to be paid his claim and that the remaining two claimants, the Standard Oil Company of New York and the Bath National Bank are to be paid *pro rata* from the residue, if there be any.

The two claimants, last above named, deny the right of Birddina Howell to any part of the fund upon the ground that she was not the lawful wife of Ira A. Howell, and, therefore, is not entitled to dower and they also deny the right of Alvah Armstrong to participate in the distribution of the moneys on the ground that the judgment under which he claims was not a lien upon the mortgaged real estate or upon the moneys derived from the sale of it, and that they alone can share in the fund by reason of their several warrants of attachment levied upon the surplus, and their later perfected judgments.

The intricacies of the situation can be appreciated only from a detailed recital of the facts upon which the respective claimants rely to support their positions.

Ira A. Howell, the mortgagor, was a resident of the town of Avoca, in the county of Steuben, and on the 21st day of July, 1919, he left home with the avowed purpose of going to Hornell to have some repairs made to his Ford car; he never came back; in the foreclosure action he was served by publication and a judgment was entered therein April 5, 1920, and the mortgaged premises were sold thereunder May 22, 1920; the referee who made the sale executed a deed to the purchaser on June 16, 1920, and it was recorded the same day; he deposited the surplus realized upon the sale, amounting to $678.13, with the county treasurer June 18, 1920; his report was confirmed four days later on June twenty-second.

Intermediate the sale of the mortgaged premises and the execution of the deed and on June 15, 1920, Alvah Armstrong recovered a judgment against Ira A. Howell, which was docketed on that day, for the sum of $583.85; it is by virtue of this judgment that said creditor asserts a lien upon the surplus.

The Standard Oil Company founds its claim as a sharer in the moneys upon a judgment recovered and docketed in its favor against Ira A. Howell on either the 4th or the 5th of July or the 4th or the 5th of August, 1920, the original judgment confusing the dates, but it is not important, for the sum of $141.84; the National Bank of Bath likewise founds its claim upon a judgment recovered and docketed in its favor against the said Ira A. Howell on September 23, 1920, for $988.32.

Service in each of the actions in which the three said judgments were recovered was made upon the defendant by publication; in the Armstrong action no warrant of attachment was issued; a warrant of attachment, however, was issued in the action in which the Standard Oil Company was plaintiff on June 26,

1920, and in the action in which the bank was plaintiff a like warrant was issued June 17, 1920, and the sheriff assumed to levy under each of said warrants upon the surplus moneys in the county treasury.

The Standard Oil Company and the Bath National Bank unite in an attack upon the Armstrong judgment as a foundation for a lien upon the surplus for the reasons that no warrant of attachment against the property of Ira A. Howell had first been obtained, and if a valid judgment it was not a lien upon the fund; the claimant Armstrong, on the other hand, contends that the judgment is valid, a warrant of attachment being unnecessary because defendant Howell was a resident of the state of New York, and that the judgment, having been docketed before the referee's deed was given, became a lien upon the real estate which attached to the surplus; the validity of this judgment then lies at the threshold of our inquiry.

We are all, of course, in agreement that if Ira A. Howell was a non-resident of the state of New York the judgment was without validity; the claimant Armstrong takes the position that he was a resident; the claimants oil company and bank apparently proceed now upon the theory that he was a non-resident; he was a resident in July, 1919, and the referee has found that there was no evidence before him to show but that he was still a resident of the state of New York at the time the order for service by publication was made.

An examination of the various affidavits made in support of the several applications in the three actions in which judgments were recovered and the recitals in the judgments reveal considerable confusion upon this vital point.

The first affidavits in point of time were made in the action brought by the Standard Oil Company by plain-

tiff's attorney and by a deputy sheriff, verified January 17, 1920; the attorney after relating the facts of defendant's disappearance, substantially as above, states that " his present residence and whereabouts are unknown;" on June 26, 1920, the same affiant, upon application for a warrant of attachment, practically repeated the above quoted language and further stated " that said defendant is a natural person and a resident of the State and that he had departed from the State of New York with the intent to defraud his creditors and to avoid the service of the summons;" the judgment recited that the defendant was a resident of the state.

As the basis for an order directing service by publication in the action brought by the bank the president of the bank stated in his affidavit, verified June 15, 1920, that defendant was a resident May 30, 1919, and for sometime after, and as he was informed and verily believed that he left the state to defraud creditors and to avoid service of summons; the sources of his information are alleged to be the two affidavits before mentioned in the oil company action and copies of them were annexed; he further stated that he was satisfied that the defendant was no longer a resident of the state and had departed to defraud his creditors; the order recited that the defendant was not a resident or if so his residence is unknown; the findings of the court on the trial recite due proof of summons " upon non-resident defendant," but it is found as a fact " That service of the summons was made upon defendant who was a resident without the State * * *;" the judgment refers to the defendant as a non-resident.

The attorney for the claimant Armstrong in his affidavit on the application for an order directing service by publication stated that the defendant's

residence and present whereabouts are unknown and further that the sources of his information were the affidavits in the oil company action, on file in the Steuben county clerk's office; all of the judgment rolls were in evidence before the referee and were therefore used upon this motion.

It is quite apparent that the several claimants have not consistently adhered to either assumption of residence or non-residence of the defendant Howell; an allegation that defendant has departed from the state with intent to defraud his creditors or to avoid the service of a summons is appropriate only where the defendant is a resident, a position apparently assumed by the claimants bank and oil company in their applications for warrants of attachment; the claimants Armstrong and the oil company obtained jurisdiction of the defendant upon orders directing service by publication containing quite identical recitals and founded upon affidavits containing identical statements.

It seems to me, therefore, that the claimant Armstrong should not be denied the benefits of a judgment against a resident, absent from the state.

The position, therefore, of the two claimants opposing the confirmation of the report predicated upon the alleged non-residence of defendant Howell is untenable; for the purposes of this motion said defendant must be deemed to be what both of said claimants have described him to be, a resident absent from the state.

It follows that the judgment in favor of claimant Armstrong is a valid judgment since it was not necessary to levy an attachment. *Stow* v. *Stacy*, 14 Civ. Pro. Rep. 45; *Connecticut Trust & S. D. Co.* v. *Wead*, 172 N. Y. 497; Code Civ. Pro. §§ 1216, 1217.

My attention has been called to no authority which requires or even suggests that a judgment cannot be

taken by default against an absconding resident without first procuring a levy under a warrant of attachment.

The judgment being valid there remains to consider whether it became a lien upon the surplus; unless it did there is no basis for the Armstrong claim; the claimant's position is, as above stated, that the judgment having been docketed before the referee's deed was executed it became a lien upon the real estate that passed over to the surplus; the opposing claimants contend that after the property was struck down to the bidder upon the sale no judgment lien could attach to it and that, therefore, the claimant Armstrong cannot pursue the proceeds of the sale.

I am quite in accord with the proposition, necessarily so by compelling authority, that a judgment docketed after a sale does not become a lien upon the property sold; but there is to be determined what constitutes a sale, whether it means the declaration by the referee that the property has been sold to the bidder and perhaps a memorandum of the sale, signed by the purchaser, or whether that is but one of the processes in the sale, something more being required before the transaction becomes a sale; this question is answered, I think, in *Nutt* v. *Cuming*, 155 N. Y. 309, which all of the judgment creditors cite in their briefs; in that case the judgment under which the claim was made was a lien upon the real estate at the time the decree in an action to foreclose a mortgage, which was a prior lien upon the premises, was entered; the sale of the property was deferred until more than ten years had elapsed from the entry of the judgment; it was held that the statute of limitations had run against the lien of the judgment, even though the decree in the foreclosure action was entered within ten years after its recovery; in the discussion the

court said that under the provisions of the decree the judgment creditor became barred and foreclosed, not upon the date of the entry of the decree in foreclosure, but from and after the sale of the premises, and the conveyance made thereunder; and again that " The provision barring others of their interest in, or of their rights of equity of redemption in the mortgaged premises, of necessity relates to the final concluding act, that of sale of the premises. * * * as soon as the sale is made, confirmed, and conveyance delivered, that provision in the judgment becomes operative and of full force, and the parties to the action are forever thereafter barred and foreclosed of all their right, title, interest and equity of redemption." A necessary corollary is that in order to profit by his lien the judgment creditor should have sold the property in execution of his judgment. That the conveyance upon the sale is the essential step is also clear from section 1632 of the Code of Civil Procedure.

The conclusion to which I come, therefore, is that the term sale when used without limitation means a consummated sale, and that the Armstrong judgment having been docketed before the title became vested in the purchaser became a lien upon the surplus when deposited. Unless this be true, if the purchaser had not completed his bargain, and the owner, as he might well have done, had arranged with the mortgagee to suspend the further execution of the decree for an indefinite period or had paid the amount due under it, the judgment creditor would have been remediless.

It will not escape remark that the word " sale " has ever been used in this review in the dual senses to which it easily accommodates itself.

From many other cases that give comfort to this

result I cite but two — *Cheney* v. *Woodruff*, 45 N. Y. 98; *Mitchell* v. *Bartlett*, 51 id. 447.

I have been cited to but one case where the court has commented on the condition that exists here; in *Sweet* v. *Jacocks*, 6 Paige, 355, the chancellor stated that if the judgment there under consideration was docketed before the sale it was an equitable lien upon so much of the surplus moneys as the judgment debtor was entitled to, but if his judgment was recovered after the property was struck off to the purchaser he never had any legal or equitable lien upon the fund or upon the premises which produced it; the court further stated, however, that it was unnecessary for the purposes of that decision to consider the question whether the judgment creditor had acquired a lien; indeed the court could not have decided the matter for it did not appear whether the judgment was recovered before or after the sale; what was said upon the subject, therefore, has no significance.

In *Terry* v. *Fuller*, 60 Misc. Rep. 562, we are left in doubt to what stage in the proceeding the term sale is applied.

The claimant Birddina Howell has failed to establish that she was the wife of Ira A. Howell; there was submitted to me after the argument of this motion a certified record in an action entitled Orrin Eckler against Birddina Eckler from which it appears that the plaintiff was awarded an interlocutory decree of divorce from the defendant in the Supreme Court of the state of New York, July 11, 1921, on the ground that she was living in adulterous intercourse with Ira A. Howell; this disposes of her claim to dower.

It is practically unnecessary to inquire whether in any event the claimants oil company and bank could be awarded any relief in this proceeding other than to defeat the lien of the Armstrong judgment.

The report is not confirmed as to the claim of said Birddina Howell, but it is found that she is not entitled to any part of the surplus; in other respects the said report is confirmed.

The order to be entered in accordance herewith may provide that there be paid from said fund, *first,* the fees of the referee; *second,* the sum of twenty dollars, costs of two motions, to the attorneys for the claimant Armstrong; *third,* the amount due upon the Armstrong judgment; and *fourth,* that the residue, if any there be, be paid *pro rata* upon the judgments of the Standard Oil Company and the Bath National Bank.

Ordered accordingly.