J. Irwin Shapiro, J.
This is a motion in a surplus money proceeding pursuant to section 1362 of the Real Property Actions and Proceedings Law to confirm the report of the Referee appointed to ascertain and report the amounts due to those persons who have liens upon the surplus moneys realized upon the sale of the mortgaged premises and to ascertain the priorities of those liens.
The property covered by plaintiff’s mortgage was sold on July 12,1968 and a surplus of $71,911.62 above the amount due under the judgment of foreclosure was realized. On August 7, 1968 the Referee’s report of sale, dated July 30, 1968, was filed. In his report the Referee stated that, subsequent to the sale, he executed and delivered to the purchaser upon the foreclosure sale the usual Referee’s deed to the property. By order of this court made on February 17, 1969 that report of sale was confirmed and the Referee in this surplus money proceedings was appointed to ascertain and report the amounts due to the persons claiming the surplus moneys and the priorities of such claimants. Some 96 claims in all have been filed against the surplus moneys. They are (1) 89 by the tenants of the property foreclosed for the loss of the security deposit made by each to Poskin Realty Corp. (Poskin), the owner of the fee, under a lease, some of which also include claims for prepaid rent and similar losses; (2) by Brewster House, Inc. (Brewster) for $74,000, by virtue of an alleged unrecorded mortgage given by Poskin to Brewster (which claim, filed on November 25,1968, is made by Gabriel Arab, Trustee in Bankruptcy of David Merkin, who allegedly owned 90% of the outstanding common shares of stock of Brewster); (3) by Anita G. Greenfield, as executrix *502 of the estate of Nathan Mittag, deceased (Greenfield), for $23,529.32, by virtue of holding all the issued and outstanding shares of stock of Poskin as collateral security for loans made to David Merkin and Harold B. Posner; (4) by Louis D. Krasner, Inc. (Krasner) for $809.50, by virtue of a judgment against Poskin, docketed in the office of the County Clerk of Queens County on September 30, 1968; (5) by Consolidated Edison Company (’Consolidated) for $736.74 for electric current furnished; (6) by New York Telephone Company for an unspecified amount for telephone service; (7) by the State of New York for $910.72 for unpaid franchise taxes by virtue of a warrant (which has the force and effect of a judgment) docketed in the office of the Clerk of the County of Kings on November 27,1968; (8) by Burns Bros. Preferred, Inc. for $5,229.36 by virtue of a judgment docketed in the office of the Clerk of Queens County on June 4, 1969.
Although a consideration of the validity of the claims to the surplus money and the priorities among them makes it manifest that they raise a number of questions of law, the Referee’s report is utterly devoid of any citation of applicable authority or discussion of the legal principles involved. It consists merely of dogmatic dispositions of those claims. Thus, the Referee has rejected claims of Brewster, Greenfield, some of the tenants and Burns Bros. Preferred, Inc., and has found the claims of the balance of the tenants, Krasner, the State of New York and Consolidated entitled to share in the surplus moneys. Some of these findings are clearly contrary to governing principles of law, and those are rejected as specifically set forth below. (See CPLR 4403.)
Before discussing the individual claims and the Referee’s findings relative to each, an analysis of the principles of law applicable to the issues seems desirable. Such an analysis necessarily starts with the basic premise that surplus money realized upon a sale in foreclosure is not a general asset of the owner of the equity of redemption, for it stands ‘1 in the place of the land for all purposes of distribution among persons having vested interests or liens upon the land ” (15 CarmodyWait 2d, New York Practice, § 92:425; also see, Albro v. Blume, 5 App. Div. 309, 310-311). Put another way, surplus money takes the place of the equity of redemption. (Davison v. MacDonald, 124 Misc. 726, 728, affd. 216 App. Div. 759.) It thus follows that only one who had a vested estate or interest in the land sold under foreclosure which was cut off by the foreclosure sale is entitled to share in the surplus money. (15 CarmodyWait 2d, op. cit., §§ 92:426, 92:427; Albro v. Blume, supra, *503 pp. 310-311; Davison v. MacDonald, supra, p. 728; Goldberg v. Feltmans of Coney Is., 144 N. Y. S. 2d 250, 252.) The mechanism by which this is accomplished is by considering the lien existing on the land at the time of the foreclosure to have been transferred to the fund of surplus moneys. (Nutt v. Cuming, 155 N. Y. 309, 313.)
It follows, as a necessary corollary, that since a contract or general creditor of a mortgagor whose property is foreclosed has no lien on the property at the time of the sale, he has no lien upon the surplus money fund and he cannot claim any portion of the fund. (15 Carmody-Wait 2d, op. cit., § 92:440; Powell v. Harrison, 88 App. Div. 228, 232; Delafield v. White, 19 Abb. N. C. 104, 110.)
As occasionally occurs, a slight mutation in the law governing which liens are entitled to share in surplus money has developed without an adequate explanation for the variation. Although the eases above cited determined that only liens existing at the time of the sale in foreclosure are entitled to surplus moneys, with priority in each creditor determined by the filing date of his lien or judgment (see, e.g., Nutt v. Cuming, supra, p. 313; Davison v. MacDonald, supra, p. 728), it was nevertheless held in Warwick Sav. Bank v. Long Is. Chapter of Knights of Columbus Soc. Serv. (253 App. Div. 276), Anderman v. 1395 E. 52nd St. Realty Corp. (60 Misc 2d 437, 440) and Nichols v. Howell (116 Misc. 340) that the lien of a judgment docketed after the delivery of the deed of a Referee in foreclosure but before the confirmation of the foreclosure sale shares in surplus moneys pro rata with other similar liens without priorities.
Applying these principles of law to the claims made against the surplus money fund, I determine that:
1. The claims of the tenants for security deposits and advance payments of rent, listed as claims 1 to 89 in the Referee’s report, are disallowed and the Referee’s finding that these are valid claims against the surplus money is rejected. Apart from the fact that a security deposit under a lease continues to be the property of the tenant and constitutes a trust fund in the hands of the landlord (General Obligations Law, § 7-101), such a security deposit merely gives the depositor, a claim against the person with whom the deposit was made. It is not, without more, a claim against or a lien upon the rented property. Absent such a status, the security deposit is not a lien upon surplus moneys and is therefore not entitled to share in the fund.
*504 The tenants contend, however, that their claims to recover the security deposits constitute equitable liens against the property, and that therefore they are entitled to share in the surplus moneys. The difficulty with their contention is that they do not have equitable liens on the property. ‘ ‘ Equitable liens ” it has been held, ££ arise only upon proof that money was expended for the improvement of the premises by a person in a confidential relationship to the owner * * * or upon proof of an agreement that the premises would be held as security for the obligation” (Anderman v. 1395 E. 52nd St. Realty Corp., 60 Misc 2d 437, 439, and cases there cited). ‘ ‘ To find an equitable lien it is necessary that an intention to create such a charge clearly appear from the language and the attendant circumstances. Strict proof of such intention is required. * * * £ There should also appear proof that clearly established the intention that the premises would £ £ be held, given or transferred as security for the obligation” of the contract. ’ ” (Pennsylvania Oil Prods. Refining Co. v. Willrock Producing Co., 267 H. Y. 427, 434-435.) The elements to support an equitable lien being absent, the security depositors (the tenants) have no claim to the surplus fund here being distributed.
Hopefully, the tenants may not be remediless. Since, by virtue of statute, title to the security deposits remained in the tenants and constituted trust funds in the hands of the landlord, the withholding of that money in light of the factual situation here may well constitute a wrongful conversion sufficient to support an attachment of the surplus moneys. (See CPLR 6201.)
2. The Brewster claim: The Referee’s finding that the evidence submitted in support of this claim was insufficient to establish the existence of an unrecorded mortgage is confirmed, and that claim is rejected. The Referee, in reaching his conclusion, has reviewed the evidence on this claim in his report, and it is not required that it be reviewed here again. Suffice it to say that no unrecorded mortgage was produced by the claimant nor did any person with personal knowledge of the transaction testify that a mortgage in favor of Brewster was executed by Poskin or that such a mortgage ever existed. To establish title by a lost deed or a lien by a lost mortgage there must be clear and certain evidence showing that the deed or mortgage was properly executed with all the formalities required by law and - a showing of the contents of such instrument. (Edwards v. Noyes, 65 N. Y. 125, 127; City of Oneida v. Drake, 133 Misc. 382, 385-386; Ann. 148 A. L. R. 400-403.) Ho such *505 proof was presented to the Beferee. Moreover, the claim founders on the insurmountable statutory obstacle which renders void a mortgage which is neither in writing nor subscribed by the mortgagor. (General Obligations Law, § 5-703.)
Claimant’s request upon this motion that if it is found that the existence of the mortgage has not been established, its claim should be allowed in the amount of a judgment it has against Poskin is denied. The claim, filed on November 25, 1968, was not based on a judgment but on an allegedly unrecorded mortgage, which would have constituted a lien upon the property if properly substantiated. In addition, the judgment docketed on October 31, 1968 and after the sale in foreclosure had been confirmed, could in no event constitute a lien upon the surplus moneys even if it had been docketed in Queens County and not in Kings County, as is the case here.
3. The Greenfield claim falls into the same category as the claims of the tenants; it is a mere contract claim which has never ripened into being a lien upon the property. Consequently, the claimant Greenfield may not participate in the surplus moneys. In any event, it is not even a claim against Poskin; it is a claim based upon promissory notes executed by David Mirkin and Harry B. Posner. The fact that Greenfield holds all the issued and outstanding shares of stock of Poskin as collateral security for the payment of those notes does not give Greenfield a claim against Poskin on the basis of those notes, even though the collateral may have been tendered worthless. The Referee’s finding that this claim is not based upon a valid lien is confirmed and the claim is rejected.
4. The Krasner claim: The Referee’s finding that this claimant had a valid lien for $809.50, with interest from September 30, 1968, is confirmed. This claim is based upon a judgment docketed in Queens County on September 30, 1968, after the sale in foreclosure. However, since the judgment was docketed prior to the confirmation of the sale on February 17, 1969, this claim is entitled to share in the surplus moneys on a prorata basis, without priorities, with all claims similarly situated under the holdings in the Warwick Sav. Bank, Anderman and Nichols cases above cited.
5. The Referee’s finding that Consolidated has a “ valid claim ” against Poskin for $736.74 is meaningless. This claim, not being based upon a valid lien, is rejected as not eligible to share in the surplus moneys.
6. New York Telephone claim: The Referee’s finding that this claim was not based upon a valid lien is confirmed.
*506 7. The State of New York claim: The Referee’s finding that this was a valid lien based upon a judgment for franchise taxes is rejected and the claim is disallowed. Apart from the fact that no notice of claim was filed, the judgment which is the basis of this claim did not constitute a lien against the property or the surplus fund, for the judgment was entered in the Clerk’s office of Kings County on November 27, 1968, and there is no proof that a transcript was ever docketed in Queens County, where the property is located. The fact that this claimant is the State of New York does not mean that the requirements of the law may be disregarded and its claim recognized even though it be not a valid one. “ There is not one law for the sovereign and another for the subject. * * * Both stand upon equality before the law ”. (People v. Stephens, 71 N. Y. 527, 549-550; Danolds v. State of New York, 89 N. Y. 36, 44).
8. The Burns Bros, claim: The Referee finds that Burns Bros, has a “ valid judgment ” in the sum of $5,229.36 entered on February 24, 1969 but that since “this claimant failed to file a claim in the initial proceeding, [he] * * * cannot find that a lien exists.” The finding of a “valid judgment ” which does not constitute a lien is meaningless in this proceeding. However, the finding that this claimant did not have a valid lien is confirmed, and this claim is not entitled to share in the surplus moneys. Aside from the fact that the Burns claim was not timely filed, its judgment never became a lien against the property or the surplus moneys because it was not docketed until after the foreclosure sale on July 12, 1968 (Nutt v. Cuming, supra; Albro v. Blume, supra) and after that sale was confirmed on February 17, 1969 (Warwick Sav. Bank v. Long Is. Chapter of Knights of Columbus Soc. Serv., supra; Anderman v. 1395 E. 52nd St. Realty Corp., supra; Nichols v. Howell, supra).
Having thus disposed of the claims to the surplus moneys, there remains for disposition an allowance to the Referee in this proceeding and the applications of the attorneys for some of the claimants of allowances for legal services rendered in this matter.
The Referee has requested an allowance of $7,500, inclusive of disbursements. As has been noted, the factual situation here presented made it manifest that numerous questions of law were involved in the disposition of the issues in this matter. Unfortunately, the Referee, judging from the absence in his report of any citation of authority or even a discussion of the legal principles involved, failed to research the law applicable to the facts here. As a result, it has been necessary for this *507 court to do its own original research into the law, an obligation which the Referee should have undertaken in the first instance. In this light, and considering the limited extent of the services rendered by the Referee, an allowance of $7,500 to the Referee is not warranted. In the order to be entered hereon, the court will fix a fair allowance for the Referee, together with a provision for the payment of his disbursements.
The attorneys for claimant Krasner (with an allowed claim of $809.50) have applied for an allowance of $3,500 as legal fees for services rendered in making the motion to confirm the Referee’s report of sale and to appoint a Referee to determine the parties entitled to share in the surplus moneys and in making this motion to confirm. That application is based upon the resettled order of this court dated March 7, 1969, which provides, inter alia, ‘1 that legal fees be paid to Kornblum & Shlefstein, attorneys for claimant Louis D. Krasner, Inc., out of said surplus moneys for legal services rendered herein, the amount thereof to be determined and fixed in the Order to be made herein for the distribution of said surplus monies. ’ ’ A careful review of the applicable law convinces me, however, that this provision was improvidently made and that the movants are not entitled to an allowance for legal fees. Accordingly, the court, on its own motion, vacates the aforesaid portion of the resettled order.
It is well settled that generally an attorney may not recover legal fees from persons other than his client merely because such persons were benefited by his services. (Matter of Loomis, 273 N. Y. 76, 81-82.) It has been said that “ costs or allowances for expenses in legal proceedings depend upon statute, and, in the absence of any statute allowing them, none can be recovered ” (Matter of City of Brooklyn, 148 N. Y. 107, 109; also, see, Syracuse Sav. Bank v. Stokes, 71 Misc. 508, 509; CPLR 8301-8303). An exception to this rule arises in cases where a class of representative action is brought on behalf of all members of a class for whose benefit the plaintiff may properly sue; or where a party has obtained a decree which creates a fund in which others may share (Soffer v. Glickman, 27 Misc 2d 721, 726); or “ where moneys are in the hands of the court for distribution among unknown owners” and services are rendered in ascertaining who those unknown owners are (House v. Amsdell Brewing & Malting Co., 133 App. Div. 486, 489; Soffer v. Glickman, supra, p. 726). That Krasner’s attorneys do not come within any of the foregoing exceptions is patent. This was not a class or representative action; the fund of surplus moneys was not created through the efforts *508 of the movants; and it is not necessary, in distributing the surplus moneys, to ascertain any unknown owners of the fund.
It has been the historical rule that in surplus money proceedings there is no authority for an allowance of counsel fees to any of the parties. (Reilly v. Empire State Improvement Corp., 251 N. Y. 351, 353; Realty Assoc. Securities Corp. v. Jaybar Realty Corp., 257 App. Div. 1001, affd. 282 N. Y. 603; Goldberg v. Feltmans of Coney Is., 144 N. Y. S. 2d 250; German Sav. Bank v. Sharer, 25 Hun 409, 413; McDermott v. Hennesy, 9 Hun 59; 15 Carmody-Wait 2d, p. 432, § 92: 468.) Buie 262 of the former Buies of Civil Practice provided that “ the only costs which can be allowed to a party moving for the reference [in a surplus money proceedings] are motion costs of the motion for reference and of the motion to confirm the report, together with necessary disbursements.”
When the Civil Practice Act was repealed (CPLB 10002), the provisions of former rule 262 of the Buies of Civil Practice dealing with surplus moneys were, to a great extent, enacted into the Beal Property Actions and Proceedings Law (§§ 1355, 1361,1362) by chapter 312 of the Laws of 1962. The fact that the quoted portion of rule 262 is not contained in the Beal Property Actions and Proceedings Law is of no significance. That omission did not change the rule interdicting allowances in surplus money proceedings, for that was the law before rule 262 came into existence and the enactment of that rule did not create new law but merely explicated the law as it existed. That the court, as a general proposition of law, was without authority to allow counsel fees in a surplus money proceeding was determined in German Sav. Bank v. Sharer (25 Hun 409, 413, supra) and McDermott v. Hennesy (9 Hun 59, supra) without resort to rule 262 (which did not exist at the time). Moreover, the Advisory Committee Notes in connection with this legislation (Fourth Preliminary Beport of the Advisory Committee on Practice and Procedure to the Grovernor and Legislature, dated January 2, 1960; N. Y. Legis. Doc., 1960, No. 20) confirms the conclusion here reached that the omission of the quoted sentence of former rule 262 from section 1361 of the Beal Property Actions and Proceedings Law was not intended to and did not change the law to permit allowances in surplus money proceedings.
In those Notes, it is stated at page 516: “ [Section'1361 of the Beal Property Actions and Proceedings Law] combines and simplifies rules 262 and 263 of the Buies of Civil Practice. The apparent limitation on costs in the last sentence of rule 262 is omitted. It provided that the only costs allowed for *509 a motion for the reference and to confirm are motion costs. Such a provision is not required.” (Emphasis supplied.)
Thus, in 15 Carmody-Wait 2d (p. 432, § 92: 468) published in 1967, it is said: “ There is no authority for the allowance of counsel fees in a surplus money proceeding.”
Accordingly, the application by the attorneys for Krasner for an allowance for legal services rendered is denied. However, those attorneys are awarded $20 motion costs on the motion to confirm the Referee’s report of sale and to appoint a Referee in the surplus money proceedings, together with disbursements of $259.40, and $20 motion costs on the motion to confirm the report of the Referee on the surplus moneys, together with disbursements of $238.08, all payable out of the surplus moneys. (CPLR 8106, 8202.)
For the foregoing reasons, the application of the attorney representing a number of the tenant claimants for an allowance of counsel fees for the legal services he has rendered on behalf of his clients is also denied, as is the tenants’ cross motion for other relief.