OPINION OF THE COURT
John F. Lawton, J.
This motion has been brought by defendant Continental Homes of New England, a Harley company (hereinafter Continental), pursuant to RPAPL 1355 for an order ratifying and confirming a referee’s report of a mortgage foreclosure sale and for payment of the whole of the surplus moneys from the sale to Continental.
The underlying judgment of foreclosure and sale in this matter was granted on September 7, 1982 and thereafter on October 18, 1982 the property was duly sold at public auction by Joseph Pachura, Jr., for $20,000 to defendant Continental. The referee’s report of sale sworn to on October 28, 1982 and duly filed on November 9, 1982 provides that after having made all required payments to the plaintiff, along with all costs associated with the sale, there *659 remained surplus moneys in the sum of $6,023.59, which were deposited with the Oneida County Commissioner of Finance. Claims to this surplus have been filed with the Oneida County Clerk by defendant Continental on November 15, 1982 and by the New York State Tax Commission on December 7, 1982.
No objections or exceptions have been taken to the referee’s report and, therefore, defendant Continental’s motion to confirm the referee’s report is granted.
The request for payment for surplus moneys by Continental is for an unsatisfied judgment docketed on March 19, 1982 in the amount of $27,855.90. The priority of this claim is unopposed by all defendants except the State of New York. The State of New York in opposition to Continental’s claim asserts that defendant 5 K’s Building Corporation owed franchise taxes for the period ending December 31, 1980 and December 31, 1981 in the amount of $769.06. The State asserts that these franchise taxes, pursuant to subdivision (j) of section 1092 of the Tax Law, became a lien on defendant 5 K’s Building Corporation’s real and personal property on March 15, 1981 and March 15, 1982, respectively, and, therefore, have priority over Continental’s judgment. In response thereto Continental contends that a franchise tax search was done on September 21, 1981 which showed as of that date no franchise taxes were due and owing and thereby the State should be foreclosed due to its own misrepresentation claiming priority of this undisclosed franchise tax from 1980. Further, Continental alleges that though subdivision (j) of section 1092 establishes a lien, a priority does not occur unless the State issues a warrant (Tax Law, § 1092, subds [c], [d], [e]) or enters a judgment regarding these unpaid franchise taxes.
In support of its contention Continental cites Sadow v Poskin Realty Corp. (63 Misc 2d 499) wherein a claim for surplus moneys from a foreclosure sale based on franchise taxes was rejected because a judgment based on this tax was never docketed in Kings County. The unspoken rationale in this case would be that third parties should be protected from having their rights overturned by secret liens. The State in that case, by failing to properly docket a *660 judgment on this franchise tax, gave no notice of its existence or extent to third parties. Further, if a judgment creditor rather than the State had failed to docket his judgment, he would lose his priority over subsequent judgment creditors. In Sadow (supra) the court concludes that the State with regard to its franchise tax should be treated the same as any other creditor who has failed to docket its judgment and, therefore, the State’s lien is rejected. As to this equality of treatment of sovereign and subject, People v Stephens (71 NY 527, 549-550) cited in Sadow provides: “The State, in all its contracts and dealings with individuals, must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract, in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor.”
Though the court agrees with the public policy set forth in Sadow (supra) and the underlying rationale therefor, it is compelled by the plain language in subdivision (j) of section 1092 of the Tax Law to come to a contrary result. Subdivisions (b) through (f) of section 1092 provide one method whereby the State by demand and notice (Tax Law, § 1092, subd [b]) and thereafter issuance of a tax warrant obtains a lien for certain taxes including franchise taxes on the real and personal property of a corporation. This tax warrant upon receipt by a Sheriff (Tax Law, § 1092, subd [d]) is entered as a judgment in the county clerk’s office and thereafter the Sheriff executes this warrant in the same manner as a property execution issued by a court of record (Tax Law, § 1092, subd [f]). An additional and alternative method to the aforesaid procedure for creation of a lien and execution thereon is provided by subdivision (j) of section 1092 of the Tax Law:
*661 “(j) Lien from due date of return. —
“(1) In addition to any other lien provided for in this section, each tax imposed by article nine, nine-a, nine-b or nine-c shall become a lien on the date on which the return is required to be filed (without regard to any extension of time for filing such return)”.
As to the case at bar, the date for the franchise taxes to be filed for the years 1980 and 1981 are, respectively, March 15, 1981 and March 15, 1982. Further, on those dates this “tax shall be a lien and binding upon the real and personal property of the taxpayer”. (Tax Law, § 1092, subd [j], cl [1].) No requirement is provided in this subdivision for any other notice, procedure or action undertaken by the State for the creation or continuation of this lien. This subdivision, also, provides those liens that this tax shall be deemed subject to: “But the lien of each such tax shall be subject to the lien of any mortgage indebtedness existing against real property previous to the time when the tax became a lien and where such mortgage indebtedness has been incurred in good faith and was not given, directly or indirectly, to any officer or stockholder of the corporation owning such real property, whether as a purchase money mortgage or otherwise, and shall also be subject to the lien of local taxes and assessments, without regard to when the lien for such taxes and assessments may have accrued.” (Tax Law, § 1092, subd Q], cl [1].) Thus, this tax lien is not subject to a subsequently docketed judgment, as occurs in the case at bar, and being in existence prior to time to these judgments, would have priority over the same. Thus, it is the court’s opinion that without any further notice to third parties as of the date for filing a franchise tax return, this tax becomes a lien with priority over subsequently docketed judgments.
This position is supported and even expanded in the authoritative treatise New York Jurisprudence wherein it provides: “Corporate franchise taxes, and interest and penalties thereon, have priority over the claims of judgment creditors of the corporation, whether the judgments were docketed before or after the assessment of the tax, and even though no warrant for collection has been issued.” (58A NY Jur, Taxation, § 916; see, also, New York Term. Co. v *662 Gaus, 204 NY 512; Matter of Century Steel Co. of Amer., 17 F2d 78; Whitman Fed. Sav. & Loan v Hempstead Bank, 236 NYS2d 631.)
Further, the court has reviewed defendant’s equitable estoppel argument that a franchise tax search was obtained by the plaintiff which defendant’s attorney relied on to advise his client in purchasing the premises at the foreclosure sale. No statement is made that the defendant’s position at the foreclosure sale would have changed if this information was known. Further, this search was not conducted for defendant’s benefit or at a time in close proximity to the foreclosure sale (search dated Sept. 21,1981; sale, Oct. 18, 1982). Upon a review of the facts and circumstances of this matter including Continental’s judgment, the foreclosure sale price, the franchise tax amount, and the alleged reliance by Continental, this court concludes that it cannot accept Continental’s equitable estoppel assertion against the State of New York.
Accordingly, the referee’s report is confirmed and the surplus moneys from the sale in the amount of $6,023.59 are to be distributed as follows:
(a) Payment to the defendant, Continental Homes of New England, a Harley company, in the sum of $5,254.53; and
(b) Payment to the State of New York in the sum of $769.06.