**UNITED STATES of America, Plaintiff,**

v.

**Max POLLACK, formerly d/b/a Max Pollack Co., et al., Defendants.**

**No. 62 C 1442.**

United States District Court
E. D. New York.
July 31, 1964.

Morris Permut, New York City, for defendants Mestel.

Joel P. Kay, Washington, D. C. (Joseph P. Hoey, U. S. Atty., Stanley Meltzer, and Thomas J. Lilly, Asst. U. S. Attys., Louis J. Oberdorfer, Asst. Atty. Gen., Fred B. Ugast, Atty., Dept. of Justice, of counsel), for United States.

DOOLING, District Judge.

The Government has sued to reduce to judgment unpaid assessments against defendant Max Pollack for unpaid Federal withholding and Federal Insurance Contributions Act taxes, and for the foreclosure, as against all defendants, under the lien of such taxes, of Pollack's interest in a parcel of real estate in Rego Park and of the interest of Pollack's transferee, the Mestels, in a parcel of real estate in Middle Village. The Mestels appeared in the action, but did not answer. The Government then moved for summary judgment and established its general right to judgment on the basis that there were due $30,243.43 and interest and that notices of tax lien had been duly filed against Pollack on sundry dates on and between May 12, 1958, and January 30, 1962. Since the Mestels bought the Middle Village property from Pollack on August 7, 1958, that property is subject to the lien of only those assessments for which notices of lien had been filed on or before August 7, 1958; such assessments (for the fourth quarter of 1956 and the first and third quarters of 1957) amounted to $6,-719.29. The lien of the $6,719.29 extended to the Rego Park property as well, since Pollack owned it at the relevant times. The remaining assessments aggregating $23,524.14 are liens only on the Rego Park property. (Lien amounts are base amounts without interest accruals, if any.)

While the present suit was progressing, the first mortgagee sued in Queens County Supreme Court to foreclose its mortgage on the Rego Park property; the United States was joined under 28 U.S.C. § 2410. The Rego Park property was sold in foreclosure on May 7, 1964,

for $33,700, indicating a surplus over mortgage debt and interest of, perhaps, $21,000 (depending on the amount of the proper costs and expenses of sale, prior tax liens etc. * * *).

If the Government were to present its tax liens for payment in the Rego Park foreclosure in the order of their filing dates, the tax liens filed before August 7, 1958, would certainly be fully paid (assuming that there are no other liens involved except the first lien of the mortgagee, the Government's tax liens and modest charges for costs, local taxes and the like). The result would be to exonerate the property now owned by the Mestels.

Accordingly the Mestels now move, in effect, to stay any foreclosure in the present case until the Rego Park foreclosure and distribution have been completed, at which time, as the Mestels hope, the pre-August 7, 1958, liens will have been satisfied (or will be deemed satisfied, if equity requires that) and their property will then be entitled to be released scatheless from the present foreclosure suit.

For present purposes it may be assumed, as the parties more or less assume, that the Mestels did not know of the liens when they bought the Middle Village property and so did not pay a reduced price on that account and that they have a claim for breach of covenant on their deed against Pollack. The question then becomes whether in this or the state court they have any legally protected interest in the Government's satisfying its liens in age-order in the Rego Park foreclosure so as to relieve the Mestels' property of the burden of the senior liens.

■ It is concluded that, subject to any adjudication (or quasi-adjudication) that occurs (or that might have been had) as between the Mestels and the Government in the Rego Park foreclosure suit, the Government is to be considered, in the present action, as having done in the Rego Park foreclosure action, what equity required and it was able to do

when put on notice of the Mestels' interest. The entry of a foreclosure decree in the present action should therefore be stayed until the proceedings in the Rego Park action are complete. Equity, it would appear, requires that in the Rego Park proceeding, the Government so proceed that, without sacrifice of the ultimate total collectibility of its lien amounts out of the two properties and without jeopardizing the full collectibility of the liens prior to its liens on the Rego Park property, it does not needlessly subject the Mestels' property to any greater charge than is necessary to make it whole (not in excess of its pre-August 7, 1958, lien claims on the Mestels' property). The Government is not required to satisfy its liens on the Rego Park property in automatic time order; the "prior in time, prior in right" interest of the Government is a principle that exists in its behalf and that it can waive in whole or in part as to one or more properties; it is not a duty of the Government nor does it create a right as against the Government in other persons to have the Government satisfy its liens in age order without reference to the effect of such an application on the full collection of its claims from two properties both of which are subject to part of the liens.

■ Whatever the power of a creditor may be to apply payments to debts where the debtor does not direct an application (Restatement, Contracts, § 387), it is not an absolute (Restatement, Contracts, § 389), and, if it were, it would be high time to change the rule. Section 389(e) of the Contracts Restatement indicates the obvious rule of reason, that a creditor it not free to apply funds to a particular debt if he knows that will violate a duty the debtor owes to a third person and, here, the creditor knows—now at least—that Pollack owes a duty to the Mestels to see that the debt is satisfied, to the extent it can be, out of his property rather than theirs. Section 394(1) (a) pursues the same idea where there is no instruction as to application on either

part. The Restatement appears to state the general and the New York rule, Commercial Credit Corporation v. Schwartz, E.D.Ark.1955, 130 F.Supp. 524 is an application of the principles and United States v. American Casualty Co., 63-2 U.S. Tax Cases 89,492, at page 89,496, par. 9617 is no different in recognition of the existence of the principle. If United States v. American Caramel Co., E.D.Pa.1959, 172 F.Supp. 95 applied a different principle, it would be out of the current of the law generally, but it seems to reflect the effect of its unusual facts, including the fact that the property sought to be exonerated was expressly sold subject to liens; to exonerate it would give the transferee a windfall.

Since the general priorities rule does not compel the Government to exonerate the Mestels' property by securing payment from the Rego Park property if that would result in its going in part unpaid or in its doing an inequity to a person who owed no duty to the Mestels, and since (on the other hand) the Government must deal with the two funds to which it has access for payment in such manner that it imposes no avoidable injury on others, and since the result of the foregoing is that any duty that the Government owes to the Mestels to satisfy its liens preferentially out of the Rego Park property can only be a duty to do so out of Pollack's interest in the "surplus" (if it really be such) and not out of anyone else's interest (since no one except Pollack owes any known duty to the Mestels to exonerate the Middle Village property from the burden of the Government's lien and Pollack owed no higher duty of exoneration to the Mestels than to anyone else who had an interest in his properties), the way is clear enough (subject to what in fact develops as to the other encumbrances on the Rego Park property) unless the form of Mr. Justice Pette's foreclosure decree or the mystique of the Buffalo Savings Bank case in dealing with circuity of lien requires a different result (United States v. Buffalo Savings Bank, 1963, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283). In principle it does not.

The State Court is, of course, master of the meaning of its own foreclosure decree, but it does not appear to do more than to require the satisfaction, in accordance with the Buffalo Savings Bank rule, of such United States tax liens as the Government presents. The decree, as contemplated by United States v. Buffalo Savings Bank and implemented in Buffalo Savings Bank v. Victory, 4th Dept. 1961, 13 A.D.2d 207, 215 N.Y.S.2d 189, aff'd, 1963, 12 N.Y.2d 1100, 240 N.Y.S.2d 164, 190 N.E.2d 536, provides (a) for the creation and reservation out of the proceeds of sale of a "Priority Adjustment Fund" measured by the amount of the first mortgage and those other tax or other liens that are superior to the Federal tax liens; then (b) for the payment of the Federal tax liens to the extent that there are funds to do so; then (c) for the payment of liens junior to the Federal tax liens but superior to the first mortgage lien; then (d) for the payment out of the "Priority Adjustment Fund" of any liens junior to the Federal tax liens but superior to the first mortgage lien that cannot be paid at step (c) above, and then (e) for the payment out of the remaining part of the "Priority Adjustment Fund" of the First Mortgage and other liens superior to the Federal tax liens, and then for the payment of other junior liens in regular rank. Nothing in the ranking requirements of the Buffalo Savings Bank case in itself coerces the Government to present all its liens for participation or to present them in any particular mechanical way. And it does not appear that the foreclosure decree intends to go beyond what the Buffalo Savings Bank rule requires.

Whether the Mestels could be allowed a voice in further proceedings in the Rego Park foreclosure, under New York Real Property Actions and Proceedings Law, § 1361 or otherwise (Cf. Powell v. Harrison, 3rd Dept. 1903, 88 App.Div. 228, 85 N.Y.S. 452) may be doubtful. But it would appear that to the extent

that they are not entitled to or accorded a voice in the distribution of the surplus, if any, they could litigate with the Government in this Court the rights and wrongs of any application of funds made in the foreclosure, for the Mestels would, then, not be bound by the foreclosure distribution treated as an adjudication of rights, and, as indicated above, the Government's right to apply funds is not absolute.

What has been said is, simply, an application of the principles recognized in Orleans County Nat'l Bank v. Moore, 1889, 112 N.Y. 543, 20 N.E. 357, 3 L.R.A. 302, and Harding v. Tifft, 1878, 75 N.Y. 461, and generally.

Accordingly, on the motion of defendants Mestel, it is

Ordered that further proceedings for the sale of the Middle Village property of the defendants Mestel under foreclosure of the tax liens thereon of the United States be stayed until the conclusion of the foreclosure and surplus money proceedings affecting the Rego Park property of defendant Pollack, or until the further order of the Court.