**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Walter KOCHER, a/k/a Walter A.**
**Kocher, Defendants-Appellants.**

**No. 24, Docket 72-1163.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1972.

Decided Oct. 30, 1972.

E. Gayle McGuigan, New York City (McGuigan & Kilcullen, New York City), for defendants-appellants.

Gerald A. Rosenberg, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., Yale L. Rosenberg and Michael I. Saltzman, Asst. U. S.

Attys., New York City, of counsel), for appellee.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from a partial summary judgment rendered by Hon. Charles M. Metzner, United States District Judge, Southern District of New York, May 10, 1971. Judge Metzner's opinion is reported in 329 F.Supp. 1079 (S.D.N.Y.1971). Judgment affirmed.

This action was brought by the United States on June 24, 1965 to secure an adjudication of indebtedness for federal income taxes and to foreclose tax liens on real property located in the Village of Tarrytown, Westchester County, New York. The Government's first motion for partial summary judgment sought a decree that the taxpayer (Mr. Kocher) was indebted to the United States for unpaid, assessed income taxes, plus assessed interest for the years 1943–47 in the total amount of $275,863.31, plus interest thereon according to law. The motion was unopposed and entry of the judgment dated November 23, 1970 was consented to by counsel for the taxpayer. The total amount of adjudicated indebtedness including interest to January 2, 1971 was $500,590.07 with interest accruing thereafter at the rate of $44.14 per diem. The Government then moved for summary judgment of foreclosure. The property on which foreclosure was sought consists of ten parcels of land. Five parcels, denominated the Homestead Parcels since Mr. and Mrs. Kocher live there, were acquired by the Kochers in 1944 and 1945 by deeds running to Mr. and Mrs. Kocher, as tenants by the entirety. The other five parcels (the "Disputed Parcels") were acquired in 1946 by deed running to Mr. Kocher alone. In October, 1961, at the request of the Government, the Kochers executed deeds of all ten parcels to themselves as tenants in common in order to defeat in the event of Kocher's demise, succession to the property by his widow, by operation of law, free of any tax lien.

In opposition to the motion for summary judgment, the Kochers maintained that there was newly discovered evidence with respect to the Disputed Parcels which would indicate that Mrs. Kocher's interest in them arose before the tax lien by virtue of a partnership agreement entered into between the husband and wife in 1946. Since the Government did not have time to investigate these allegations, the motion for full summary judgment was withdrawn and a motion for partial summary judgment to foreclose only with respect to the Homestead Parcels was made. The District Court granted this judgment which (a) permitted the United States to sell the Homestead Parcels in their entirety as opposed to a sale of only the taxpayer's interest therein [1] (b) permits the United States to bid at the foreclosure sale and (c) certified pursuant to Fed.R.Civ.P. 54(b) that there is no just reason for delay and directed that final judgment be entered forthwith. The appellants urge that each of these determinations was erroneous as a matter of law.

(a) *May the Government enforce its lien by selling the Homestead Parcels or is it limited to a sale only of Mr. Kocher's undivided half interest in the property?*

██ This is a question of first impression in this Circuit and involves an interpretation of Section 7403 of the Internal Revenue Code, 26 U.S.C. § 7403

---

1. There is no dispute that the federal tax liens are junior to mortgages held by the defendant Commercial Bank of Soleure and the defendant Eric Kocher. The judgment provides that the property will be sold subject to mortgages which are senior to the United States tax liens. It is also undisputed that if the Government is permitted to sell the property as distinguished from Mr. Kocher's interest therein, the proceeds after the expenses, and the costs of foreclosure, are to be shared equally beween Mrs. Kocher and the United States.

(1970).[2] There is no question but that the statute literally provides for the sale of any property in which the delinquent taxpayer has any interest, with the proceeds to be distributed according to the interests of the parties.[3] Appellants admit that if the statute is to be literally applied, there is no escape from the position taken by the Government and adopted in Judge Metzner's opinion below. There is no doubt either that Mr. Kocher's interest in the property as a tenant in common is to be determined by state law, but that the manner of enforcement of the lien is to be governed by federal law. Aquilino v. United States, 363 U.S. 509, 512–814, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). While the New York law provides for a sale by a tenant in common only if it appears that a partition in kind cannot be made without great prejudice to the owners (N.Y. Real Prop. Actions and Proceedings Law § 901(1) (McKinney 1963) ), the section refers only to actions brought by tenants in common *inter sese* and does not purport to affect a sale by virtue of a tax lien in favor of the United States, the enforcement of which is properly determined by federal law.

Appellants' principal reliance for escape from the literal language of Section 7403 is upon Folsom v. United States, 306 F.2d 361 (5th Cir. 1962) which held that the Government, as a lien holder, did not have the right under Section 7403 to force a sale of property in which a tax delinquent had an undivided one-sixth interest. This, in the view of that court, denied the right of the other five joint owners to seek a partition in kind under Alabama law. That court would require the Government to acquire only the undivided interest of the delinquent and then to exercise whatever property rights such joint owner might exercise under state law.

■ We cannot agree with the *Folsom* decision because in our opinion it overlooks the principles of *Aquilino* and *Bess,* which teach that although we look to state law to determine what interest, if any, the taxpayer has in the property,

---

2. Section 7403 provides:

 (a) Filing.—

 In any case where there has been a refusal or neglect to pay any tax or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability *or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.*

 (b) Parties.—

 All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

 (c) Adjudication and decree.—

 The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may decree a sale of such property,* by the proper officer of the court, *and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.* If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary or his delegate directs.

 (d) Receivership.—

 In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Secretary or his delegate during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity. (Emphasis added)

3. Section 7403(b), supra note 2, requires all persons having liens or claiming any interest in the property be made parties to the action which has been accomplished in this case.

the manner of enforcement of the lien is then to be determined by federal law. The holding in *Folsom* was specifically rejected by the Seventh Circuit in United States v. Trilling, 328 F.2d 699 (7th Cir. 1964), which permitted the sale of property owned jointly by husband and wife and rejected the proposition that the sale should be limited to the tax delinquent husband's joint interest. The *Trilling* decision has been followed in United States v. Washington, 402 F.2d 3 (4th Cir. 1968), cert. denied, 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145 (1971), and United States v. Overman, 424 F.2d 1142 (9th Cir. 1970).

The sale of the property pursuant to the statute not only eliminates the necessity of the United States bringing two lawsuits (acquiring the tenancy and then selling it) but obviously will result in a greater financial return to the Government, the taxpayer and his wife. It is apparent that a bidder would pay considerably less for an undivided interest in the Homestead Parcels in which he presumably could have no realistic expectation to possess in common with the remaining tenant, Mrs. Kocher. He would in effect be purchasing a partition action and another sale. In any event, we cannot do more than to construe the language of Congress and we cannot assume that the statute authorizing the sale of the property in which the taxpayer has an interest was mistakenly or arbitrarily selected. Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965).

(b) *May the United States be permitted to bid at the foreclosure sale?*

 In his judgment below, Judge Metzner detailed the terms and conditions of the sale fixing the amounts due and the priorities to be observed. The property is to be sold subject to the senior mortgage liens of the Commercial Bank of Soleure and Eric Kocher. The order specifically provides that the Internal Revenue Service might purchase the property. Appellant contends that Section 7403(c) (supra note 2) prohibits the United States from bidding except when it holds a first lien and then it may only bid in a sum not exceeding the amount of such senior lien plus the expenses of sale. Since the Government is concededly a junior lienor here, the argument runs, the judgment permitting it to purchase is erroneous and reversible.

We cannot accept this construction of the statute. The last sentence of Section 7403(c), which is at issue here, was added in 1966 (Act of Nov. 2, 1966, Pub.L.No.89–719, Tit. I, § 107(b), 80 Stat. 1140), and no case construing it has been cited to us or discovered in our research. The purpose of the amendment is made clear, however, by the report of the Senate Committee.

Where property is sold at a tax lien foreclosure sale, the Internal Revenue Code contains no specific authority authorizing the Federal Government to bid at these sales where it believes that less than full consideration is being offered for the property. Such authority is contained elsewhere, however, in the public statutes (see sec. 195 of title 31 of the United States Code).

It is desirable for the Federal Government to bid in property to prevent its sale at distress prices in order to assure that the Government receives the full value of the property sold or the amount of the Government's tax claim, as well as to protect the interests of the delinquent taxpayer whose property is being sold.

For the reason indicated above, the bill codifies the rule that where the Government brings an action to enforce a tax lien, the Government can bid on the property where the Government holds a first lien. The amount which it may bid under the bill is limited to the amount of its lien, plus selling expenses. Whether or not the Government exercises this authority to bid within the limit set forth in the bill is a matter within the discretion of the Treasury Department. (S. Rep.No.1708, 89th Cong., 2d Sess., in 1966 U.S.Cong. & Ad.News 3722, 3747).

It is thus evident that the intent of Congress was to prevent the sale of property at distress prices in order to assure that the Government gets full value as well as to protect the interests of the delinquent taxpayer. It is further evident that whether the Government lien is junior or senior bears no relationship to the possibility of a distress sale which could be financially disastrous for both the Government and the taxpayer. Reading the statute to permit bidding solely when the Government is a senior lienor, therefore, is not sensible or logical and we can only read it to mean that only where the Government is the senior lienor, is its bid limited as provided; this presumably protects the Government's interest and maximizes the taxpayer's protection. However, where the Government is a junior lienor, it certainly may bid but without the limitation contained in Section 7403(c).

As the Senate Report indicates, the Internal Revenue Code had previously contained no specific authority permitting Government bidding at a tax foreclosure sale where it believed that less than full value was being offered for the property. It could hardly be contended that prior to 1966 the Government could not purchase property at a tax foreclosure sale under appropriate circumstances. As the report points out, the authority for Government bidding is contained elsewhere in the public statutes, to wit, 31 U.S.C. § 195 (1970), which was derived from a statute [4] enacted in 1824. Section 195 specifically provides [5] that the United States may become the purchaser at every sale on execution of the lands of a debtor.

 It must also be observed that this section limits the bid to that of the "judgment for which such estate may be exposed to sale." Since Section 7403(c) specifically permits the court to determine finally the merits of all claims and liens upon the property, the judgment for which each estate may be exposed for sale would include, where the United States is a junior lienor, the amounts of the senior liens being foreclosed. Hence the limitation imposed by Section 7403(c) where the Government is a senior or first lienor are not applicable when the Government is a junior lienor. In that case under Section 195, its bid could be increased to include the amounts of any senior liens which would be within the judgment. While these statutes have not been construed together before so far as our research indicates, this interpretation is consistent with their language and purpose. We see no point at all in placing any limitation on the Government's bid in the judgment below in view of the circumstances of this sale. The property to be sold is valued for sale purposes at approximately $400,000. The sale is made subject to the senior mortgage liens which total approximately $181,000 and which will not be foreclosed. The Government tax lien exceeds $500,000. Under these conditions it would be totally unrealistic to suppose that the United States would purchase the property for more than its lien.

(c) *Was the certification of the District Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure proper?*

Appellants argue that Judge Metzner improperly directed the entry of a final judgment with respect to the Homestead Parcels because Rule 54(b) permitting such procedure is only applicable where

---

4. Act of May 26, 1824, ch. 172, § 2, 4 Stat. 51.

5. Section 195 provides:

> At every sale, on execution, at the suit of the United States, of lands or tenements of a debtor, the United States may, by such agent as the head of the department or independent agency at whose instance suit was instituted shall

> appoint, become the purchaser thereof; but in no case shall the agent bid in behalf of the United States a greater amount than that of the judgment for which such estate may be exposed to sale, and the costs. Whenever such purchase is made, the marshal of the district in which the sale is held shall make all needful conveyances, assignments, or transfers to the United States.

there is no more than one claim for relief presented. Appellants urge that here there is only a single claim for relief—foreclosure of tax liens covering all ten parcels, both the Homestead and the Disputed Parcels, and further, that the tax delinquency was determined in a single settlement entered into in 1960 between the Government and the taxpayer.

■■ The fact that the tax liability of Kocher was determined in a single transaction does not at all preclude the claimant from pressing multiple claims for relief. The "differing occurrences or transactions" test for appealability under Rule 54(b) was deleted by the 1946 amendments to Rule 54(b)· which eliminated the "same transaction or occurrence" language. The Supreme Court in Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), rejected the original concept that there could not be multiple claims arising from a single occurrence or transaction. This Circuit has also repudiated this approach. Campbell v. Westmoreland Farm, Inc., 403 F.2d 939 (1968). This case makes the test whether or not there are a number of different claims which could have been separately enforced. 403 F.2d at 941. 26 U.S.C. § 6321 (1970) provides that federal tax liens cover "all property and rights to property . . . belonging to [the taxpayer]." Here the taxpayer has an interest in ten separate parcels—with respect to the Homestead Parcels his interest is unquestioned and partial summary judgment has been granted with respect to those. The Disputed Parcels present questions of fact and law not presented with respect to the Homestead Parcels. It would seem that if other real property is discovered and the foreclosure sale here fails to satisfy the tax deficiency, the Government would have further claims for relief against each such parcel. If the parcels were separately located in different federal judicial districts, it would seem obvious that as many claims to relief by foreclosure in separate proceedings could be brought in different jurisdictions until the entire amount of the indebtedness could be collected. While the parcels here are physically contiguous this does not render the claims for relief, single.

There is no problem here of mutual exclusivity. The litigation with respect to the Disputed Parcels is now before Judge Metzner. In the event that a second foreclosure sale is decreed, the judgment can certainly provide that the Government's lien will be reduced by whatever amount is realized on the first sale of the Homestead Parcels.

■ Appellants further urge that even if multiple claims are presented within the meaning of Rule 54(b), it was error for the court to certify that there was "no just reason for delay." Appellants argue that the Court below should await the disposition of the action as to the Disputed Parcels. Appellants rely upon United States v. Pollack, 233 F.Supp. 775 (E.D.N.Y.1964), aff'd, 370 F.2d 79 (2d Cir. 1966) to support their position. In Pollack, an innocent purchaser for full value acquired property which unknown to him was subject to a federal tax lien. The Court directed the Government to first sell other property subject to the lien before selling that which had been acquired by the innocent purchaser. The case is, of course, distinguishable from the one before us. While in Pollack the innocent purchaser would, in effect, be paying the tax bill of the delinquent, Mrs. Kocher is protected by the judgment below which pays her one-half of the proceeds of the sale. Moreover, while the Government did seek summary judgment to foreclose on all of the properties claiming that Mr. Kocher was the sole owner of the Disputed Parcels when the tax lien attached, it was Mrs. Kocher who raised the issue of her partnership interest on the basis of documents discovered in the "recesses" of the Kocher home on March 3, 1971, thus creating the Government request for partial summary judgment.

We are urged that since the Disputed Parcels are business properties and the

Homestead Parcels include the home of Mr. and Mrs. Kocher, it is inequitable to decree their sale now. This appeal to the conscience of the court would be attractive were it not for the facts which underlie the present litigation and which persuade us without question that the Court below did not abuse its discretion. The tax delinquency here arose for the years 1943–1947; the settlement with the Government was made in 1960. The record contains a letter from Mr. Kocher dated July 12, 1960 in which he promised to liquidate all of his tax liability by the end of 1960. He specifically promised to sell his real estate in Tarrytown, New York. The taxes involved here with the accrual of interest amount to more than a half a million dollars and in more than 12 years the taxpayer has failed to pay and failed to sell. If the loss of the home of Mr. and Mrs. Kocher is threatened, it is not by virtue of unseemly haste on the part of the United States but rather an unseemly lack of concern on the part of the taxpayer.

We affirm.