642 F.2d 1065
 107 L.R.R.M. (BNA) 2053, 90 Lab.Cas. P 12,620
 LOCAL P-171, AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF
NORTH AMERICA, Plaintiff,
v.
THOMPSON FARMS COMPANY, Defendant-Appellee.
Fritz PLANK et al., Plaintiffs-Appellants,
v.
THOMPSON FARMS COMPANY, A Corporation, et al., Defendants-Appellees.
 Nos. 79-1804, 79-1805.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1980.
Decided Feb. 26, 1981.
 
 Carl Klein, Oak Lawn, Ill., for plaintiff.
 Elizabeth H. Sediman, Chicago, Ill., for defendant-appellee.
 Before SWYGERT, Circuit Judge, WISDOM, Senior Circuit Judge,* and PELL, Circuit Judge.
 WISDOM, Senior Circuit Judge.
 
 
 1
 The only substantive issue in this case involves the proper interpretation and application of certain provisions of a collective bargaining agreement. We find ourselves in agreement with the district court's interpretation of that agreement. We hold, however, that the order entered was inconsistent with that interpretation. We therefore vacate in part and remand.
 
 I.
 
 2
 The most difficult issues in this case, however, were not raised or briefed by any party. Because they concern our jurisdiction, we must consider them on our own motion.
 
 
 3
 This action is a consolidation of two lawsuits. Both arose from the permanent shutdown of two meat packing enterprises, Thompson Farms and Reliable Packing, on August 31, 1975. The first action was filed against Thompson Farms by one of its collective bargaining opponents, Local P-171 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO. The second action was brought by seventy-odd individual ex-employees of Thompson Farms and Reliable, some of whom were also members of the union, against those two firms, individual officers of those corporations, and several financial institutions in the position of stakeholders. The latter complaint was in four counts. Counts I and II asserted irregularities in the management of and distribution of proceeds from profit-sharing and pension trusts created for the employees' benefit, and sought an accounting and restitution. Count III claimed that the employees were entitled to vacation pay for the year 1975 under the collective bargaining agreement in force at the time the firms ceased operations. In Count IV, four of the individual plaintiffs claimed extra pay for hours previously worked under an oral promise allegedly made to them by Thompson. The union's complaint, brought on behalf of its members, essentially duplicated the substance of the first three counts of the individual employees' complaint, with the added claim that the employees were entitled to holiday pay for the year of the shutdown. Federal jurisdiction was invoked under 28 U.S.C. § 1337, 29 U.S.C. §§ 185(a), 1132, and pendent jurisdiction.
 
 
 4
 As of the time this appeal was taken these claims had not proceeded to trial. After lengthy pretrial skirmishing, the claims of impropriety relating to the profit-sharing trust were dismissed by stipulation. The claims relating to vacation pay, the subject of this appeal, were adjudicated by the district court upon cross-motions for summary judgment submitted by all the parties. According to the district court's construction of the collective bargaining agreement, some but not all of the employees were entitled to vacation pay for 1975. As there was never any dispute over the amount of vacation pay each employee was entitled to once liability was established, the district court orally ordered upon motion that those entitled to it be paid immediately. Although judgment was never formally entered against it, Thompson Farms complied without objection.[1] So far as the record shows, all of the other claims are still being adjudicated in the district court.
 
 
 5
 In general, "any order ... which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties...." Fed.R.Civ.P. 54(b). The district court's order granting summary judgment on the vacation pay claim therefore would not constitute an appealable "final decision" under 28 U.S.C. § 1291 unless the district court specifically made "an express determination that there is no just reason for delay" and an "express direction for the entry of judgment" under Rule 54(b).[2] Such was not the case here. The court never directed the entry of judgment; judgment was not in fact entered on the docket by the clerk; and no "separate document" meeting the Rule 58 specifications for an effective judgment appears in the record. Nonetheless, those individual employees not entitled to vacation pay under the district court's construction of the contract filed a notice of appeal from the summary judgment and related orders on July 3, 1979. The union did not join the appeal.
 
 
 6
 On September 19, 1979, well after the notice of appeal had been filed, appellants obtained from the district court a nunc pro tunc amendment to the orders appealed from in a belated attempt to ensure their appealability. Unfortunately, appellants chose the wrong magic words to set before the district judge. Assuming that nunc pro tunc amendment could be effective after the filing of the notice of appeal, the correct method of ensuring appealability would have been to employ the Rule 54(b) certification procedure, which would have rendered the orders appealable of right under 28 U.S.C. § 1291. Instead, the amendment signed by the district judge purported to certify the orders for permissive interlocutory appeal under 28 U.S.C. § 1292(b).[3] Rather than directing entry of judgment and finding "no just reason for delay", therefore, the amendment stated that the district judge was "of the opinion that this order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this order as authorized by 28 U.S.C. § 1292(b) may materially advance the ultimate termination of the litigation". Yet the parties proceeded as if that amendment was the equivalent of Rule 54(b) certification. Federal Rule of Appellate Procedure 5 and § 1292(b) itself both require a petition for permission to appeal to be filed with the court of appeals within ten days of district court certification whenever a litigant requests the court of appeals to allow an interlocutory appeal under § 1292(b). Instead of doing so, appellants merely relied on their original notice of appeal. All the briefs submitted on appeal assumed that this is an appeal of right.
 
 
 7
 The filing of a proper petition for permission to appeal within ten days is a jurisdictional prerequisite for invocation of 28 U.S.C. § 1292(b). See Fed.R.App.P. 26(b); Atkins v. Scott, 597 F.2d 872, 879 (4 Cir. 1979); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3929, at 140-42 (1977). We need not, therefore, consider whether the orders certified here would be within our power to review under § 1292(b), if the procedures of Appellate Rule 5 had been followed.[4] Nevertheless, we conclude that in the circumstances of this case, we have jurisdiction over an appeal from a "final decision" under 28 U.S.C. § 1291. In reaching this result, we hold that in this case the district court's certification of these orders under 28 U.S.C. § 1292(b) is to be treated as equivalent to certification under Federal Rule 54(b); that the orders so certified are appropriate subjects of Rule 54(b) certification; and that the district court's amendment nunc pro tunc adding the certification language was effective even though entered after the filing of the notice of appeal.
 
 A.
 
 8
 There is no doubt that if the district court had followed the Rule 54(b) certification procedures before the notice of appeal was filed, the orders appealed from would be properly before us. Although Rule 54(b) certification is to a large extent discretionary with the district court, the "final judgment" requirement of 28 U.S.C. § 1291 and Rule 54 itself together permit orders to be certified thereunder only if they meet two minimal, nondiscretionary criteria. First, the district court action as a whole must encompass multiple parties or multiple claims for relief, rather than a single claim resting on multiple theories or a single claim with alternative requests for relief. Second, the order certified must decide finally and completely at least one of those discrete claims. See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436, 76 S.Ct. 895, 899, 100 L.Ed. 1297 (1956); Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 947 (7 Cir. 1980); Brunswick Corp. v. Sheridan, 582 F.2d 175, 182-83 (2 Cir. 1978).
 
 
 9
 An order is determined to be "final" in this context by reference to the normal standards of § 1291: if the claim had been brought as a separate litigation, only an order "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" is final Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956); Acha v. Beame, 570 F.2d 57, 62 (2 Cir. 1978). Although the parties here loosely referred to their cross-motions on the vacation pay claim as motions for "partial" summary judgment, that characterization is not controlling. Unlike the "partial" summary judgment defined by Rule 56(b), which permits summary judgment on single issues, or the "interlocutory" summary judgment of Rule 56(c), which permits summary judgment on liability while reserving the issue of damages, the district court's decision here completely decided the parties' rights and liabilities with respect to vacation pay, and is therefore final. See, e. g., In re Yarn Processing Patent Validity Litigation, 541 F.2d 1127, 1143 (5 Cir. 1976), cert. denied, 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977). Cf. Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976) (interlocutory summary judgment limited to the issue of liability and reserving the issue of damages is not final); Leonard v. Socony-Vacuum Oil Co., 130 F.2d 535, 536-37 (7 Cir. 1942). See generally 10 C. Wright & A. Miller, Federal Practice and Procedure § 2715, at 420-23 (1973).
 
 
 10
 Neither the Supreme Court nor this Court, however, has enunciated a general definition of what separate "claims for relief" are in the context of Rule 54(b). See Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 743 n.4, 96 S.Ct. 1202, 1206 n.4, 47 L.Ed.2d 435 (1976). The competing policies underlying Rule 54(b) give no clear guidance. On one hand, the liberal provisions of the Federal Rules regarding joinder of claims require some mechanism to accelerate execution of the judgment and repose as to rights decided early in a given litigation; but on the other hand, since claims in a given litigation do not always fall neatly into discrete blocks in terms of the underlying facts potentially relevant to each, piecemeal review may wastefully force appellate courts to familiarize themselves with the facts of the litigation more than once. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 432, 76 S.Ct. 895, 897, 100 L.Ed. 1297 (1956); Advisory Committee Note to Rule 54, 5 F.R.D. 433, 472 (D.C.1946). Given the infinitely differing degrees of factual overlap that a given set of claims and counterclaims may present, only a definition of "separate claims" as claims resting on entirely different facts could be applied systematically. Yet the Supreme Court rejected such a mechanical definition in Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956), and Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 451-52, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956), both of which held that "separate claims" for Rule 54(b) purposes can arise out of the same transaction and can overlap in important respects. Indeed, since the exercise of the district court's discretion in granting Rule 54(b) certification already involves a balancing of the value of accelerated repose to the litigants against the potential inconvenience to the appeals court posed by overlap between certified claims and noncertified claims, and since that determination can be reviewed by the appellate courts for abuse of discretion, it is hard to see what additional function the formal characterization of claims as "separate" or "identical" serves.[5] It is therefore not surprising that courts have been completely unable to settle on a single test for determining when claims are "separate".[6]
 
 
 11
 Rather than attempting to advance a general definition of what constitutes "separate claims", we conclude that a better approach is to state rules of thumb to identify certain types of claims that clearly cannot be "separate", and otherwise rely on the sound discretion of district judges to make that determination on a case by case basis. At a minimum, claims cannot be separate unless separate recovery is possible on each. Page v. Presser, 585 F.2d 336, 339 (8 Cir. 1978); Schexnaydre v. Travellers Insurance Co., 527 F.2d 855, 856 (5 Cir. 1976). Hence, mere variations of legal theory do not constitute separate claims. Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 743, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976); CMAX, Inc. v. Drewry Photocolor Corp., 295 F.2d 695, 697 (9 Cir. 1961). Nor are claims so closely related that they would fall afoul of the rule against splitting claims if brought separately. United States v. Kocher, 468 F.2d 503, 509 (2 Cir. 1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973); Campbell v. Westmoreland Farm, Inc., 403 F.2d 939, 941 (2 Cir. 1968); Rieser v. Baltimore & Ohio R.R. Co., 224 F.2d 198, 199 (2 Cir. 1955), cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956). The vacation pay claims in this case do not stand in any such relation to the other claims, and so they meet the minimum standards for separate 54(b) certification.
 
 B.
 
 12
 Since the district court's disposition of the vacation pay claim in this case was a "final" disposition of a distinct "claim for relief", it would prima facie have qualified for 54(b) certification. But such certification is not automatic, and the district court did not "expressly determine that there is no just reason for delay" and make an "express direction for the entry of judgment" under Rule 54(b), which are the stated conditions precedent to appeal. Nevertheless, we think that the district court's § 1292(b) certification is sufficient to satisfy the requirements of Rule 54(b), despite the weighty opinion of Judge Clark to the contrary in Lukenbach Steamship Co. v. H. Muehlstein & Co., 280 F.2d 755 (2 Cir. 1960). See also School District v. Missouri, 592 F.2d 493 (8 Cir. 1979). Lukenbach relied entirely on a conceptual distinction between interlocutory appeals under § 1292(b) and certification of an order as final under Rule 54(b). "Obviously the certification for an interlocutory appeal under 29 U.S.C. § 1292(b) is of a different tenor and serves a different purpose; it affords a means of selecting certain interlocutory orders for immediate appeal and does not, as does the rule, define the elements of finality which is the normal basis for appellate action." 280 F.2d at 757. We disagree. Though the mechanics of the two procedures are different, their primary purposes are identical: to accelerate appellate review of select portions of a litigation.[7] Recognizing this, several cases have treated 54(b) certifications as § 1292(b) certifications. Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 745, 96 S.Ct. 1202, 1207, 47 L.Ed.2d 435 (1976) (dictum); Bergstrom v. Sears, Roebuck & Co., 599 F.2d 62 (8 Cir. 1979). Since the § 1292(b) certification entered here serves all the essential functions of Rule 54(b), we think the equivalence can operate in the opposite direction as well.
 
 
 13
 The discretionary component of Rule 54(b), which requires the district court to make an "express determination that there is no just reason for delay", serves both to give the district court virtually unreviewable discretion to refuse certification, see Allegheny Airlines, Inc. v. LeMay, 448 F.2d 1341, 1346 (7 Cir.), cert. denied, 404 U.S. 1001, 92 S.Ct. 565, 30 L.Ed.2d 533 (1971), and to limit its power to grant certification by requiring it to weigh the virtues of accelerated judgment against the possible drawbacks of piecemeal review. See Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 949 (7 Cir. 1980), quoting Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 364 (3 Cir. 1975). Both of these functions were served by the § 1292(b) certification here. It unequivocally manifests the district court's intention to permit immediate appellate review, and the finding required by § 1292(b) that "ultimate appeal from the order may materially advance the ultimate termination of the litigation" is, if anything, even more strict than the "no just cause" standard of Rule 54(b). See C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3929, at 149 (1977). Under Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), which compels substantial respect for 54(b) determinations by district courts, we cannot say that the trial court abused its discretion. The only issue materially in dispute with respect to the vacation pay claim involves the construction of certain provisions of the collective bargaining agreement. This is completely irrelevant to the other claims, so there is no potential for a second appellate review of the same issue. Nor, for example, is there any possibility that the need for review might be mooted by future developments in the litigation.[8]
 
 
 14
 The purely formal aspect of Rule 54(b), the requirement of an "express direction for the entry of judgment", serves a different function. Before that language was added to Rule 54(b) in 1948, litigants had no reliable way to determine whether a particular order which determined fewer than all pending claims was final and appealable, and so were forced either to file appeals from any order even arguably final or to risk losing the right to appeal it. The talismanic direction for the entry of judgment was added to serve as an unambiguous signal. See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 432, 76 S.Ct. 895, 897, 100 L.Ed.2d 1297 (1956); Advisory Committee Note to Rule 54, 5 F.R.D. 433, 476 (1946). Nevertheless, applying the rationale of Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), we think that no useful purpose would be served by insisting on that language here. Though a strict reading of Rule 58 permits judgments to become effective only when set forth on a separate document, Mallis applied a "common sense interpretation" of that Rule to hold that the court of appeals had jurisdiction under § 1291 notwithstanding the absence of such a document when neither litigant was prejudiced by or objected to the taking of an appeal in the absence of a separate document. Similarly, while Rule 58 also strictly requires judgments to be entered on the civil docket in order to become effective, the absence of an entry does not preclude appellate jurisdiction in the absence of demonstrated prejudice to the litigants. Hamilton v. Stillwell Van & Storage Co., 343 F.2d 453 (3 Cir. 1965). See generally 9 Moore's Federal Practice P 110.08(2) (2d ed. 1980). The formal prerequisites of Rule 58 for an effective judgment serve the same signalling function as the Rule 54(b) requirement of direction for entry of judgment; the same pragmatic analysis should therefore apply when that requirement is not met. Since it is plain that neither party was prejudiced by the absence of the talismanic wording of Rule 54(b) here, neither its absence nor the absence of a separate document of judgment and docket entry deprives us of jurisdiction. See U.S. General, Inc. v. City of Joliet, 598 F.2d 1050, 1051 n. 1 (7 Cir. 1979).
 
 
 15
 We emphasize that our holding is very narrow and, properly understood, will rarely permit circumvention of the exact letter of Rule 54(b). We do not intend to revive the evils of pre-1948 practice. Our willingness to overlook the purely formal aspect of that Rule in appropriate cases is matched by our determination to insist upon substantial compliance with its requirement that the district court assess the desirability of immediate judgment and unequivocally give an affirmative answer. Only the unique equivalence of § 1292(b) and Rule 54(b) permits that here.[9]
 
 C.
 
 16
 Finally, a third potential flaw in our appellate jurisdiction also gives us pause. At the time the notice of appeal was filed, on July 3, 1979, no certification of any kind had been made by the district judge. Only on September 9 did the court enter an order attempting to add § 1292(b) certification language which we treat as equivalent to Rule 54(b) certification on a nunc pro tunc basis. The general rule is that the filing of a notice of appeal with the district court deprives that court of power to act further on the cause appealed from. In re Federal Facilities Realty Trust, 227 F.2d 651, 652-54 (7 Cir. 1955); Miller v. United States, 114 F.2d 267, 269 (7 Cir. 1940), cert. denied, 313 U.S. 591, 61 S.Ct. 1114, 85 L.Ed. 1545 (1941). According to that principle, the district court was without power to amend the order appealed from in any way after the notice of appeal was filed. But that principle has always been shot through with exceptions where a fair construction of the Federal Rules of Civil Procedure so requires. Washington v. Board of Education, 498 F.2d 11, 15-16 (7 Cir. 1979); Elgen Manufacturing Corp. v. Ventfabrics, Inc., 314 F.2d 440, 444 (7 Cir. 1963). We hold that another exception to that principle exists to permit a district court to amend an otherwise appealable order after the filing of a notice of appeal so as to add a Rule 54(b) certificate.[10]
 
 
 17
 Before today, this question was still an open one in this Circuit. In Williams v. Bernhardt Bros. Tugboat Service, Inc., 357 F.2d 883, 884-85 (7 Cir. 1966), this Court ruled that a similar attempt to obtain Rule 54(b) certification from the district court after the notice of appeal had been filed was ineffective to confer jurisdiction on this Court. Williams itself, however, noted that in Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 449-50, 76 S.Ct. 904, 907, 100 L.Ed. 1311 (1956), the Supreme Court took jurisdiction of such a case where the district court had amended its judgment with the permission of the court of appeals. Yet the panel that decided Williams did not disclose what in the record inclined it against granting such permission. In King v. Kansas City Southern Industries, Inc., 479 F.2d 1259, 1260-61 (7 Cir. 1973), moreover, this Court treated as open the virtually identical question of the district court's power to certify an order under § 1292(b) after the filing of a notice of appeal. In any case, to the extent that Williams has any precedential value at all, its reexamination is compelled by intervening Supreme Court decisions that display a pragmatic willingness to overlook purely formal deficiencies in appeal procedures if they neither unfairly prejudice the litigants nor unduly interfere with orderly judicial administration. Bankers Trust Co. v. Mallis, supra; see also Sanabria v. United States, 437 U.S. 54, 67 n.21, 98 S.Ct. 2170, 2180, 57 L.Ed.2d 43 (1978).[11]
 
 
 18
 The basis for and purpose of the rule that a notice of appeal divests the district court of power to act further in the cause appealed from is well stated by Professor Moore:
 
 
 19
 It should be noted that while the line that marks the division between what a district court may do after the filing of a notice of appeal and what it may not do is cast in terms of "loss of jurisdiction", the term does not refer to statutory jurisdiction, nor does it derive from any mandatory language in the Rules. It is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time. It should not be employed to defeat its purposes nor to induce needless paper shuffling.
 
 
 20
 9 Moore's Federal Practice P 203.11, at 3-44 n.1 (2d ed. 1980). Dismissal of the appeal here because of the belated certification would be empty paper shuffling. When the district court has not passed on the propriety of Rule 54(b) certification at all, dismissal is necessary to preserve the primacy of the district court's discretion in starting the Rule 54(b) process. See Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). But when the district court in fact grants certification, even after a notice of appeal has been filed, nothing is achieved by dismissal. In no case that we can imagine would the mere addition of a Rule 54(b) certification to an order after the notice of appeal has been filed create a potential for conflict between the district court and the court of appeals. The practice of most courts of appeals which have dismissed appeals because of deficient Rule 54(b) certifications has been to permit such cases to be resubmitted on the briefs, record, and oral argument offered on the original appeal. See, e. g., Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1171 n.9 (5 Cir. 1978); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2660, at 89 (1973). Yet the appellants here have already waited sixteen months to have their appeal heard. Were we to dismiss the appeal, the result would be that we would have the same papers before us in perhaps another sixteen months, after appellants had gone through the empty formality of obtaining another certificate and filing another notice of appeal assuming that they have the hardihood to run the appellate gamut again. Cf. 6 Moore's Federal Practice P 54.41(4), at 771 (2 ed. 1976).
 
 
 21
 Furthermore, were we to dismiss the appeal, we would create an anomalous regime in which neither the district court nor this Court has jurisdiction over the order appealed from after the notice of appeal is filed:
 
 
 22
 The only thing that is accomplished by a proper notice of appeal is to transfer jurisdiction of a case from a district court to a court of appeals. If, by reason of defects in form or execution, a notice of appeal does not transfer jurisdiction to the court of appeals, then such jurisdiction must remain in the district court; it cannot float in the air.
 
 
 23
 Ruby v. Secretary of the Navy, 365 F.2d 385, 388 (9 Cir. 1966) (en banc), cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967). This logic has led most courts of appeals to conclude that the filing of a notice of appeal from a nonappealable order should not deprive the district court of jurisdiction to act further; they rely on extraordinary writs to correct conflicting determinations of appealability by the district and appellate courts. See, e. g., Ruby; Euzuere v. United States, 266 F.2d 88 (10 Cir. 1959), vacated on other grounds, 364 U.S. 282, 80 S.Ct. 1615, 4 L.Ed.2d 1720 (1960); Hodgson v. Mahoney, 460 F.2d 326 (1 Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972); Richerson v. Jones, 551 F.2d 918, 923-24 (3 Cir. 1977); United States v. Hitchmon, 602 F.2d 689 (5 Cir. 1979) (en banc) (collecting cases). Indeed, the Fifth Circuit has gone further and ruled that even timely appeals from appealable orders need not preclude the district court from proceeding further in certain circumstances, if the appeal is patently frivolous. United States v. Dunbar, 611 F.2d 985 (5 Cir.), cert. denied, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980). We need not go so far in deciding this case, nor need we decide whether the filing of a notice of appeal from a nonappealable order may be ignored by the district court for all purposes. We do, however, hold that a district court does have power to add a Rule 54(b) certification to an order after the filing of a notice of appeal, and that if the order is otherwise appealable, such certification is sufficient to invest us with jurisdiction.
 
 II.
 
 24
 The only substantive issue in this case involves the rights of the employees of Thompson Farms and Reliable to vacation pay for the year 1975. The parties agree that the collective bargaining agreement in force at the time applies to all employees, union and non-union members alike. The relevant provisions of that contract are:[12]
 
 
 25
 33. In any calendar year, regular full-time employees (not including casual and part-time employees) shall receive a vacation with pay provided they have ... the required actual working service as provided in (b) below:
 
 
 26
 (b) "Continuous Service" is defined as one (1) year of service for each anniversary year (anniversary date to anniversary date) in which the employee has at least thirty (30) weeks of actual working service ...
 
 
 27
 A new employee will be eligible for his first vacation when he has met the later of (1) one (1) year of continuous service as defined herein, or (2) the end of the week in which he has completed thirty (30) weeks of actual working service. The date so established shall become the individual's vacation anniversary date for all vacation purposes thereafter.
 
 
 28
 34. For subsequent vacations an employee must have at least thirty (30) weeks of actual working service in the twelve (12) months immediately preceding the date the employee's requested vacation would start.
 
 
 29
 35. Vacation period will be granted as follows: First vacation period after the first anniversary date. Second vacation period and thereafter any time during the calendar year.
 
 
 30
 38. All vacations must be taken before the end of the year for which granted.
 
 
 31
 This is hardly a model of the draftsman's art. We agree with the district judge's construction of the agreement. Section 33 governs when an employee earns his vacation, while §§ 34, 35 and 38 relate to when a vacation may be taken. Under § 33, an employee earns a vacation when he has completed the "actual working service ... provided in (b)". Referring to § 33(b), we find that vacations are earned by "anniversary year"; that is, for each individual employee, take the month and day on which he first started to work for the company (his "anniversary date") and examine the year between two consecutive anniversary dates ("anniversary year"). If he has completed thirty weeks of actual work within that anniversary year, he has earned a vacation for that anniversary year.
 
 
 32
 The other contract provisions govern when vacations so earned may actually be taken by the employee. While vacations may be taken only if eventually earned, it is clearly the scheme of the contract to permit flexibility in vacation scheduling. To achieve it, the contract allows vacations to be taken before they are actually earned. The basic provision is § 35, which evidently permits a vacation which has been earned or will be earned as of the end of a given anniversary year to be taken at any time within the calendar year in which the last day of the anniversary year falls. For example, an employee who will earn a vacation as of June 1, 1970 is permitted to take that vacation on January 1, 1970 if he desires. Sections 34 and 38 place additional constraints on the employees' discretion. Section 38 merely clarifies and emphasizes one aspect of § 35: a vacation must be taken before the end of the calendar year for which it is granted. Section 34 requires an employee to have worked thirty weeks in the twelve months before the date he chooses for the start of his vacation.
 
 
 33
 The shutdown of Thompson Farms and Reliable on August 31, 1975 necessarily fell within each employee's anniversary year. The sole dispute is over the employee's entitlement to vacation pay for this partial anniversary year. The parties are agreed that there is neither an express nor an implied provision in the collective bargaining agreement whereby vacation pay may be prorated. The district judge reasoned that under the above interpretation of the contract, the only relevant provisions are those governing the earning, rather than the taking, of vacations. Under § 33, the only employees who had earned a vacation were those who had worked at least thirty weeks in the part-anniversary-year between their last anniversary date and the shutdown. Since February 7 is thirty weeks before August 31, those whose anniversary dates fell after February 7 could not possibly have worked thirty weeks in their final part-anniversary-year, and hence cannot be eligible for vacation pay.
 
 
 34
 Although we agree with this construction of the contract, we think that the order the district judge entered was inconsistent with that construction. The district judge's order correctly recognized that employees with anniversary dates between January 1 and February 6 are potentially entitled to vacation pay for their final anniversary year, since they could have worked thirty weeks within their final anniversary year before the plant shutdown. But it failed to recognize that workers with anniversary dates between September 1 and December 31 might be entitled to vacation pay as well, for they too could have worked thirty weeks in their final anniversary year. Consider an employee who started work on December 15, 1971. His last full anniversary year before the plant shutdown ran from December 15, 1973 to December 15, 1974, and his final anniversary year ran from December 15, 1974 to December 15, 1975. The plant closed on August 31, 1975. But since there are more than thirty weeks between December 15, 1974 and August 31, 1975, potentially he too could satisfy the thirty weeks of active work required for entitlement to anniversary pay for his final anniversary year.
 
 
 35
 Thompson Farm's only argument to the contrary boils down to an assertion that vacation pay is earned in advance. But, working backward, this argument has the dubious corollary that each employee earns a vacation the moment he accepts employment. More significantly, it is in direct contravention of § 33, which clumsily but distinctly provides that vacations are earned at the completion of anniversary years: "employees ... shall receive a vacation with pay provided they have ... the required actual working service ..." (emphasis added). Although the company also argues that it has in the past computed the length of service of employees for vacation purposes as if they were earned in advance, we note that it relies on documents submitted after the summary judgment motion was decided. Such belated offerings are not properly before us. See C. Wright & A. Miller, Federal Practice and Procedure § 2716, at 435 (1973).
 
 
 36
 We therefore vacate the summary judgment order to the extent that it concludes that employees with anniversary dates between September 1 and December 31 cannot be entitled to vacation pay. This case is remanded for determination of which, if any, of those employees put in the required thirty weeks of actual work during their last anniversary year, and for appropriate further proceedings.
 
 
 
 *
 Honorable John Minor Wisdom, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit sitting by designation
 
 
 [1]
 In general, of course, rendition and entry of judgment is a prerequisite to compulsion to pay. Fed.R.Civ.P. 58, 69; U. S. Industries v. Anderson, 579 F.2d 1227 (10 Cir. 1978); International Controls Corp. v. Vesco, 535 F.2d 742 (2 Cir. 1974)
 
 
 [2]
 Federal Rule 54(b) provides:
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 [3]
 28 U.S.C. § 1292(b) provides:
 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
 See generally Note, Interlocutory Appeals in the Federal Courts under 28 U.S.C. § 1292(b), 88 Harv.L.Rev. 607 (1975).
 
 
 [4]
 It has been suggested that if an order properly could be certified under Rule 54(b) and is in fact certified under § 1292(b), it is still interlocutory and therefore appealable through the § 1292(b) procedure. See Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 381 (1961). But in order to uphold Rule 54(b) against the charge that it worked an unauthorized extension of § 1291, the Supreme Court held that Rule 54(b) certification is proper only for orders inherently final in a sense defined solely by reference to § 1291. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956). It is therefore arguable (though not logically necessary) that an order for which Rule 54(b) certification is proper and which must therefore be inherently final in the § 1291 sense cannot at the same time be interlocutory within the meaning of § 1292. Some authorities indeed suggest that there should be no overlap between the orders to which Rule 54(b) may be applied and those to which § 1292(b) may be applied, see School District v. Missouri, 592 F.2d 493, 496 (8 Cir. 1979); Lukenbach Steamship Co. v. H. Muehlstein & Co., 280 F.2d 755, 757 (2 Cir. 1960); 1961 Advisory Committee Note to Rule 54(b), while some hold otherwise, see Sass v. District of Columbia, 316 F.2d 366, 368 (D.C.Cir.1963). Even learned commentators are of two minds on this point. Compare 10 C. Wright & A. Miller, Federal Practice and Procedure § 2658, at 62-63 (1973) ("(T)here is no justification for attempting to avoid the finality requirement of Rule 54(b) by certifying under (§ 1292(b))"; cites Lukenbach as correctly rejecting such "improper use" of § 1292(b)), with 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3929, at 149 (1977) (criticizes Lukenbach : "(s)urely if the court would have been prepared to review a judgment under Rule 54(b), it achieves little to deny § 1292(b) review and compel entry of judgment"). The latter view seems preferable, for the effects of a formal entry of judgment the right of the victor to enforce it, accrual of interest, res judicata effect, and the running of time for appeal in no way aid appellate review. Cf. 6 Moore's Federal Practice P 54.30(2-2), at 465-66 (2d ed. 1976)
 
 
 [5]
 Other factors may enter into the discretionary balance as well, see Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 949 (7 Cir. 1980), but that does not weaken the point made in text
 
 
 [6]
 The "same transaction" test, for example, has been surprisingly persistent despite its express repudiation by the Supreme Court in Sears and Cold Metal. See, e. g., Acha v. Beame, 570 F.2d 57, 62 (2 Cir. 1978); Page v. Presser, 585 F.2d 336, 339 (8 Cir. 1978); Note, supra note 4, at 360-61. See generally 10 C. Wright & A. Miller, Federal Practice and Procedure § 2657 (1973); 6 Moore's Federal Practice PP 54.24, 54.33 (2d ed. 1976)
 
 
 [7]
 The direction for entry of judgment under Rule 54(b) has effects other than signalling appealability. The time for filing an appeal and other deadlines are tied to the date of entry of judgment, for example. See generally 10 C. Wright & A. Miller, supra note 6, at § 2661. The most important other effect is to compel the judgment debtor to pay, since writs of execution may issue after judgment is entered. But there is nothing inevitable about this joinder of functions. Compare United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (failure to comply with formal "separate document" requirement for effective judgment means no judgment entered for purposes of computing time for appeal), with Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (same deficiency does not prevent appealability). Indeed, appealability under § 1291 often requires nothing remotely like entry of judgment. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). It is clear that the 1948 amendments, which added the direction for entry of judgment requirement to Rule 54(b), were entirely motivated by a desire to improve its signalling operation with respect to appealability; their other effects were incidental. See Advisory Committee Note to Rule 54(b), 5 F.R.D. 433, 472 (1946); 6 Moore's Federal Practice P 54.27 (2d ed. 1976)
 
 
 [8]
 It is, of course, good practice for the district judge to state reasons for granting Rule 54(b) certification in order to aid appellate review. But the requirement is not jurisdictional, and since reasons for the district court's § 1292(b) certification which we treat as equivalent to a Rule 54(b) certification are apparent from the record, the absence of such a statement does not require a remand. Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 949 (7 Cir. 1980). Cf. Cullen v. Margiotta, 618 F.2d 226 (2 Cir. 1980)
 
 
 [9]
 Moreover, we hold only that the omission of entry of judgment does not prevent an order from being final and appealable under § 1291. That omission will not be overlooked in contexts where entry of judgment serves as a benchmark precisely because it is a formal event. See note 7 supra
 
 
 [10]
 While we prefer to rest our holding on pragmatic considerations, we note that a formalistic constriction of the Federal Rules can reach the same result. 9 Moore's Federal Practice P 203.11 at 3-51 (2d ed. 1980)
 
 
 [11]
 In Sanabria, the Court said that "(t)he Court of Appeals might have been warranted in dismissing the appeal for failure of the notice (of appeal) to specify the only arguably appealable ruling rendered below". But that failure was not jurisdictional. "A mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced." 437 U.S. at 67 n.21, 98 S.Ct. at 2180
 
 
 [12]
 The plaintiffs relied solely on the language of the collective bargaining agreement on summary judgment. Although Thompson Farms alluded to past practice as an aid to construction in argument below, the only factual allegations contained in the single affidavit filed in support of its motion are perfectly consistent with the district judge's interpretation of the contract itself. We therefore agree that there was no disputed issue of fact material to the summary judgment motions